### LEWIS S. GIBSON ET AL. v. THE CITY OF NORWALK.

EVIDENCE OF THE ADAPTABILITY OF LANDS SOUGHT TO BE APPROPRIATED.

> In determining the market value of lands sought to be appropriated by a city for water-works, the jury are precluded from considering its enhanced value, from the fact that it was adapted for a reservoir, which was the very purpose for which it was being appropriated, and the jury is not permitted to make any use of the fact that such lands may have increased in value by the proposal or construction of the work for which it is taken.

BY THE COURT:

This is a petition in error, to reverse the judgment of the court of common pleas, in a proceeding brought under chapter 3 of the Revised Statutes, for the purpose of appropriating certain lands for water-works purposes.

The city of Norwalk filed its application in the court of common pleas to appropriate lands therein described for water-works purposes, the particular object being to secure lands of the plaintiffs in error, in connection with other lands, included in the same proceedings, and the lands which it had acquired by purchase, to constitute a reservoir to be used in connection with its system of water-works. The case was tried in the court of common pleas, and certain errors are alleged that occurred on the trial, in the refusal of the court to permit certain evidence to be given and in the charge of the court.

The errors complained of in the rulings of the court on the testimony and also in the charge relate to the measure of damages, or to the elements of value, which witnesses might consider in giving an opinion as to the value of the property appropriated. There is a second question made in the charge of the court that the court charged the jury that the burden of proof was on the property owners to establish the value of the property by a fair preponderance of the evidence.

The question as to the valuation, the method of arriving at it, is set forth in the bill of exceptions in the testimony of W. H. Price, a witness called by the city, and who was, on cross-examination, asked by the attorney for plaintiffs in error, the following questions:

Q. "Is it not true that in estimating the market value of the various tracts, you do not consider the natural basin, and its adaptability for water-works purposes?

A. "I do not think I did consider the water-works matter at all. I simply took the value of the property. I did not otherwise than that.

Q. "Is it not true that these lands form a natural basin, and that to make the necessary reservoir, comparatively little outlay of labor and money will be required?

This latter question was not objected to, but the court interrupted the witness, holding that the question was improper, and to the ruling of the court, counsel for plaintiffs in error excepted, and then asked this question :

Q. "Considering the natural adaptability of these lands for water-works purposes, if they have a special adaptability for that purpose, what do you say the value of these lands is ?"

This was objected to, and the objection sustained, and it was stated by counsel that he expected to prove that the conformation of the lands in controversy was such as to make them plainly adapted for the reservoir.

There was some other testimony offered, going to show that the lands in question formed a part of a natural basin or valley, surrounded or bounded on both sides by a high embankment, and from the appearance of the ground it could be readily said by a witness, or by any observation, that with no more expense than was necessary to erect a dam at some point, connecting these two banks, the lands in question could be formed into a reservoir.

Upon this subject the land owners requested the court to charge certain propositions, to wit:

(2.) "In ascertaining the market value of the lands belonging to the defendants, and described in the application filed in this case, you will consider the fact, if you find from the evidence that it is a fact that said lands are adapted to reservoir purposes."

(3.) "The adaptability of the lands in controversy as a source of water-supply, or for reservoir or water-works purposes, if you find from the evidence that it is so adapted, is a circumstance to be considered in ascertaining its market value."

(6.) "In determining the market value of the various tracts of lands appropriated, you are not precluded from considering their enhanced value, if any they may have at this time, on account of the contemplated improvement for water-works by the city."

The city also called a witness, William Perrin, who testified on cross-examination, and without objection, that these lands were more valuable for pasture lands than anything else; that he did not know as they were good for anything else, unless for water-works; that it was a very good place for water-works ; that he knew of no other place as near the city as these lands as available for water-works purposes; that this was the most available sight; that it was in the shape of a natural basin; that less work would be required here than on any other sight that had been examined; that it would require no expenditure for embankments except for dam; that he considered these lands appropriated valuable for water-works purposes; that it was elevated above the city, and otherwise desirable.

It is clear from the questions asked, which were objected to, and to the request to charge the jury that counsel for the land owners sought to have introduced in evidence before the jury, and considered by them as an element in fixing the value of the property taken, the fact that these lands, by their natural formation were specially adapted for the use which the city desired to make of them ; that they were so located as to be the most, if not the only available sight for such purposes ; and that the city was in a position where it was obliged to take this particular property; and that the necessity of the city to acquire it; and the facts that the plaintiffs in error were the owners of it, should be considered by the

jury to enhance its value for the particular purpose for which the city proposed to use it. And the question is raised whether that was a proper element to be considered, either by the witnesses in giving their evidence, or by the jury in rendering its verdict.

We think the case applicable in cases of appropriation is reasonably well settled and can be found from an examination of cases, some of which we will cite. One of the first of these is found in the 4th O. St., page 308, and in that part of the opinion on pages 328 to 332. In the course of the opinion, on page 331, Judge Ranney uses this language, referring to section 5, article 13, of the constitution, as compared with section 19 of the bill of rights, he says:

"The rule of compensation prescribed in this section (section 19) for the government of a jury has been rightly apprehended in the argument; but how a different rule is elicited from the language of the other section is not easily perceived. By the one, the compensation is to be assessed 'without deduction for benefits,' and by the other 'irrespective of benefits;' and by each, a *full compensation* is required. Now, when is a man *fully* compensated for his property? Most clearly and unquestionably, when he is paid its full value, and never before. The word 'irrespective' relates to this full compensation, and binds the jury to assess the amount, without looking at or regarding any benefits contemplated by the construction of the improvement. When this is done, and this consideration wholly excluded, the jury have nothing to do but ascertain the fair market value of the property taken; which is but saying that nothing shall be *deducted* from that value on account of such benefits."

Again he says, on page 332:

"That whether property is appropriated directly by the public, or through the intervention of a corporation, the owner is entitled to receive its fair market value at the time it is taken—as much as he might fairly expect to be able to sell it to others for, if it was not taken—and this amount is not to be increased from the necessity of the public, or the corporation to have it, on the one hand; nor diminished from any necessity of the owner to dispose of it, on the other. It is to be valued precisely as it would be appraised for sale upon execution, or by an executor or guardain; and without any regard to the external causes that may have contributed to make up its present value. The jury are not required to consider how much, nor permitted to make any use of the fact that it may have increased in value by the proposal or construction of the work for which it is taken."

In *Railway Company* v. *Longworth*, 30 O. S., 108, the court says on page 112:

"Keeping in mind the general rule applicable to all actions for compensation or damage that it is the actual as distinguished from any speculative loss that must guide the jury; we think that any facts calculated to fairly enhance the value of the property taken or increase the damage to the residue of the tract may be shown by the owner and that on the other hand, it is clearly competent for the railway company to show the converse for the purpose of reducing the recovery."

In that case it was a question whether the owner might introduce a plat which he had made of the property in question, upon which it appeared he had divided the property into town lots, for the ostensible purpose of selling the same, the plat never having been acknowledged or recorded, so as to make it a legal dedication: and it was held that the plat was admissible for the reason that it was one of the facts in exist-

once at the time of the appropriation proceedings, and might be considered in connection with all the other evidence, to ascertain what the value of the land was. If it had been shown that there was no market value for town lots at the place in question, the fact that the owner had platted them would have, of course, no weight with the jury. While, on the other hand, if there was a market, the platting of the land made it valuable for such market, so that it could be sold in small lots rather than in larger tracts.

We are referred to the case of *Goodwin* v. *Cincinnati and White Water Canal Company*, as authority in favor of the admissibility of this evidence, and of the claim which counsel made with reference to the rule of value. This was an action brought by certain stockholders of the Cincinnati and White Water Canal company, who set forth that the canal company had been the owners of the canal, and who claimed that the property of the canal, the canal lands had been, by some illegal agreement between its officers and the officers of a railroad company, who were, part of them, officers in both companies, by which the canal lands had been sold, or an agreement entered into as to its value, and a pretended proceeding for condemnation had been instituted, in which the court had entered up a judgment by consent, and without the intervention of a jury for the amount agreed upon, and which, they claimed, was grossly inadequate, and asked to have the sale set aside. The first principle of law which the court applied was that any such sale of trust property by the trustee to himself would be regarded as fraudulent *per se*, if there was any under-valuation in the value of the property, and the court found that all of the proceedings and acts of the officers, who had done anything with reference to this transfer were actually fraudulent, and that from the evidence it appeared that the lands were of greater value than the amount that was paid, or agreed to be paid for them; that advantage had been taken of the fact that the canal company was, at the time, insolvent, was earning nothing, and for that reason its lands had been undervalued, and transferred to the railroad company, who were proposing to construct a railroad upon them; and they held, that while the court below was right in refusing to set the sale aside, that it had erred in ruling out testimony, which had been offered as to the value of the lands taken and granted a new trial.

Another case, which seems to state the rule pretty clearly is in 115 Penna. St. 331, in which the court say, as to the market value of the land, and the value to apply in appropriation proceedings that:

"The market value of land is not necessarily, as would sometimes seem to be supposed, the price which it would command in a forced sale, or public auction. It is estimated by a fair consideration of the location of the land, the extent and condition of its improvements, its quantity and productive qualities, and the uses to which it may be reasonably applied, taken with the general selling price of lands in the neighborhood at the time, the price which, upon full consideration of matters stated the judgment of well informed and reasonable men will approve, may be regarded as the market value."

Another case directly in point is a case of *Moulton* v. *Newbury Port Water Company*, 137 Mass., 163, in which case the land owners sought to show that the lands taken by the water company were admirable to form, at slight expense, a natural basin for water, and offered to prove what was their fair market value for such purposes to the water company. This was excluded and the court says:

"Damages must be measured by the market value of the land at the time it was taken, not its value to the petitioners, nor to the respondent, not the value which it might have under different circumstances from those then existing. The petitioners were not entitled to swell the damages beyond the fair, actual market value of the land at the time by any consideration of the chances or probability that in the future authority might be acquired by legislation to carry the water in pipes to neighboring towns; such chance or probability must needs enter to some extent into the market value itself, and so far as the market value might be enhanced thereby the petitioners were entitled to the full benefit of it. If there were different customers who were ready to give more for the land on account of this chance, or there were any other circumstances affecting the price which it would bring upon a fair sale in the market, these elements would necessarily be considered by the jury, or by witnesses in forming an opinion of the market value. Nevertheless the value for these special or possible purposes is not the test; but the fair market value in the land, in view of all the purposes to which it was naturally adapted."

In the case at bar the landowners were seeking to show substantially the same thing as is stated in the Massachusetts case. They were trying to have the jury consider an enhanced value to this property, from the fact that it was adapted to a reservoir, which was the very purpose for which the city was appropriating it. This necessarily was an enhancement of the value, based upon the necessity of the city to have it, and not from any demand in the market for it. There was no proof that there was any general demand for this property for such purposes, and we may take notice that there is no other town or city, within any reasonable distance of this place, whose probable demand for water, or for a reservoir, would be likely to, in any wise, affect the value of the lands, and there never had been any demand on the part of the city of Norwalk for this property, before the commencement of these proceedings. If this evidence had been admitted, or if this charge that was requested had been given, the jury would have been left to speculate upon how much the city of Norwalk could afford to pay for this property, having in view, not the market value of the lands, but the necessity of the city to acquire it for this particular purpose. In our judgment the ruling of the court was correct upon the questions proposed, and upon that part of the charge. If there are any cases which seem to hold a different doctrine, we are satisfied that the rule in Ohio, as stated in the case cited, and that the best, as stated in all the authorities, is opposed to the claim made here by the land owners.

The case cited in the 98th U. S., 403, does not militate against our holding. The circumstances there were altogether different than here. That was a proceeding to appropriate certain islands in the Mississippi river by a boom company, authorized by statute to appropriate lands for such purposes, and it was permitted to be shown that the islands were so situated as to be available for booming purposes. Clearly, if they were situated where they could be used for booming logs, they were in open market, liable to be purchased by any individual or company engaged in booming logs, and to be used for the same purpose as that for which the company in question was appropriating them, and therefore, their value for that purpose was the principle element to be considered by the witnesses and by the jury in estimating the value of the lands. They were shown to be some thirty acres, in three irregular shaped islands, of prob-

ably no value for any other purpose except to which a boom to hold logs might be moored and fastened, and in such a situation that the logs would be protected and not impede navigation. Any person, who had logs, had a right to float them down the Mississippi river, and had a right to acqnire a place where they could be boomed, by purchase or by condemnation under the statute.

But the record here disposes that evidence was admitted, showing the formation of the lands, the facts were given in evidence to the jury, all of the facts, and from those facts it is easy to conclude that there was no market for this property, or any part of it, for the purpose that the city wanted it. We think this sufficiently disposes of those objections to this judgment.

We think on the whole the case was fairly submitted to the jury by the court. There was some exceptions taken, to requests offered by the land owners on the ground that the requests were in writing, presented to the court, and asked to be given to the jury before the argument of the case, and some of those, it is conceded, are embraced in the charge of the court as finally given. We do not think that the court was required to give those requests in writing after the evidence was closed and before the argument. This proceeding is governed by the statutes relating to the appropriation of property by municipal corporations alone, unless in that statute there is found an exception; and section 2245, does not refer to any exception, but states the course of proceeding upon the file, and as to the charge of the court provides:

"The injury and assessments shall, in other respects, be made by the jury, under such rules and regulations as shall be given by the court."

The second objection, which we deemed worth noticing is in relation to the statement by the court that the burden of proof was upon the property owners to establish the value of the property by a fair preponderance of the evidence; there is some criticism upon the use of the word "fair," and it is claimed that it requires a greater degree or weight of evidence than the use of the words "preponderance of the evidence" without the qualifying adjective. We are disposed to think that the word "fair" in that connection was proper, and that to say to the jury they shall find an issue or a fact from a fair preponderance of the evidence, is the same as to require that they shall, after a fair consideration of all the evidence, find the preponderance of the evidence in favor of, or against the fact in question. And we are pointed to no case where any different rule has been held. In the circuit court it was held that to charge in a criminal case that a defense set up by a defendant must be established to the satisfaction of the jury, or that the jury must be satisfied by a fair preponderance of the evidence, was imposing a higher degree of proof than the law required, and the supreme court held the same substantially in the case of *Kelch* v. *The State*, 55 O. S. R., Adv., 356, where the court below charged in a case where insanity was set up as a defense that "the proof must be such as to overcome the legal presumption of sanity; it must satisfy you that he is insane."

If any just criticism could be indulged in of the use of that phrase "fair preponderance," we do not think it was prejudicial to the land owners in this case. The question submitted to the jury was not as to the truth or falsity of any fact or issue, but only the value of the lands appropriated, or the injury to the balance of the land owners, tract, by reason of the severance of that appropriated. It was conceived that the land was valuable, and the only question for the jury to determine

was the amount that should be assessed, which the city ought to pay for the appropriation.

We think the judgment should be affirmed without penalty.