JOHN C. MOULTON & another *vs.* NEWBURYPORT WATER
COMPANY.

Essex.   Nov. 9, 1883. — May 8, 1884. · W. ALLEN & HOLMES, JJ., absent.

An owner of land on one side of a brook, opposite to which land, at the mouth of
   and bounding on the brook, there is a public landing, and also of land on both
   sides of the brook at a short distance up the stream, is not entitled to with-
   draw and dispose of one half of the water running in the brook, as an article
   of merchandise, but only to use such water as it flows down the channel.
The measure of damages for taking land on the side of a stream by a water com-
   pany is the fair market value of the land at the time it is taken, and not its
   market value as a storage basin to the company, or as such a basin for sup-
   plying the town in which it is situated, or other adjacent towns, with water by
   pipes carried thereto.

PETITION to the Superior Court for a jury to assess the dam-
ages caused to the petitioners by the taking, by the respondent,
of certain lands, springs, and water, under the St. of 1880, *c.*
235.*  Trial in the Superior Court, before *Staples*, J., who
allowed a bill of exceptions, in substance as follows:

   The petitioners offered evidence tending to prove that their
lands taken were full of springs affording a part of the water
taken by the respondent; that a part of the water taken flowed
from a spring upon land adjoining that of the petitioners, and
the water from this spring flowed in an ancient watercourse to
and through their land to the Merrimack River; that the re-
spondent, by building a dam upon the petitioners' land, made a
storage basin and pond upon the land, by which the waters
coming from the spring and brook were retained; that, prior to
the building of the dam, the tide ebbed and flowed some dis-
tance upon the petitioners' land above the site of the dam; that,
at the site of the dam, and for a small distance below, the peti-
tioners' land so taken extended across and upon both sides of

---

   * This statute incorporated the respondent, for the purpose of supplying
the inhabitants of Newburyport with pure water, and authorized it to take
water within certain limits, and to take and hold, by purchase or otherwise,
any real estate necessary for the raising, preservation, and purity of the
water, &c.  By § 4, any person injured in any way by any act of the cor-
poration under the statute could have his damages assessed in the manner
provided when land is taken for highways.

the watercourse, the petitioners there owning the bed and both sides of the watercourse; that at low tide the brook flowed into the Merrimack River a short distance below the dam, and to low tide in the river; that, from the point where the petitioners owned both sides of the brook, they owned to the centre of the stream; and that, opposite thereto, there was a public landing, one side of which bounded on the brook.

The petitioners contended that they had the right to dispose of all the waters running in the brook, as there were no lower owners between them and tide water; or, at least, that they had the right to dispose of half of such waters as an article of merchandise. But the judge ruled that they had no ownership in the whole or any part of said waters, but only a usufruct therein.

The petitioners offered evidence tending to prove that the lands taken by the respondent were admirably adapted to form, at slight expense, a storage basin for water; and offered to prove what was their fair market value for such purpose to the respondent. The judge excluded the evidence; but allowed the petitioners to show the value of the lands as a storage basin for water in connection with its legitimate use and detention by the petitioners, that is, for any purpose for which the individual owner may store it.

There was evidence tending to prove that, from the many springs upon the petitioners' lands taken by the respondent, independently of any watercourse running through said lands, the lands were a source of water supply; and the petitioners offered to show, taking the contour and nature of the land and its adaptability for storage purposes into account, what was the fair market value of such lands for storage purposes, for supplying Newburyport or any of the adjacent towns with water by pipes carried thereto. The judge excluded the evidence.

The petitioners asked the judge to instruct the jury, that the market value of the lands as a storage basin for the storage of water for the respondent, or for any other parties, was to be considered by the jury in estimating the damages. The judge declined to give the instruction asked for, but instructed the jury as follows: " The jury are to determine what was the fair

market value of the land taken by the respondent.   In determining this, they ought to determine its capabilities and the purposes for which it may be used, and also that, under the statute, the title to the land was vested in the respondent.   The value is to be assessed according to its value when taken, having regard to the uses to which it may probably be applied.   The jury will not consider the value of the lands to the respondent as a source of water supply to be carried away in pipes, or used as a storage basin, under the statute.   They will not consider the value of the land as a source of water supply to be carried in pipes or aqueducts to any village, town, or city, through the public streets or lands of other persons, either by the respondent or any other party, it not appearing that any person or corporation other than the respondent had the right or authority so to carry the same; but the jury may consider the value of the land as a source of water supply or storage basin to the petitioners, for any purpose for which they might lawfully use the water, but not to be carried in pipes for water supply to Newburyport or any adjacent town."

The jury returned a verdict for the petitioners; and they alleged exceptions.

*C. G. Saunders*, (*D. Saunders* with him,) for the petitioners.

*J. A. Gillis & D. L. Withington*, for the respondent.

C. ALLEN, J.   1. We are not called upon to determine whether or not the petitioners would have had a right to dispose of all the water running in the brook, if they had owned the land upon both sides of it down to the place where it emptied into tide-water at low tide.   That question does not arise in this case, and is left open for future determination. It cannot be said, as the petitioners contend, that no one but the petitioners had any interest in the stream, because at its mouth there was a public landing, one side of which bounded on the brook.   For all that we know to the contrary, the water from the stream may have been useful or necessary, except perhaps at high tide, to make the landing available upon the side bounding on the brook.   And in such case it is plain that the petitioners, by reason of their ownership of the land upon the opposite side, and also upon both sides at a short distance up stream, would not have a right to sell and appropriate one half

of the water. Where there are opposite owners upon a stream of running water, important uses by each owner, as, for example, for water power, for boating and landing, for fishing, for bathing, would be impaired if the other were at liberty to withdraw from the bed of the stream one half of the volume of water which usually flows therein. Such an extensive use. of the water would be unreasonable. The doctrine applicable to such cases is thus laid down in Washburn on Easements, 221 : " The property in the stream is one and indivisible, and each riparian proprietor is bound to use it accordingly as an entire stream in its natural channel; or, in other words, he cannot sever the stream, for a severance would destroy the rights of both. One proprietor cannot, however, so appropriate or use the stream as materially to injure others jointly interested in it. Each having a right to only one half of the water, he may use the same, but must use it as it is accustomed to flow down the channel." See also *Canal Trustees* v. *Haven*, 11 Ill. 554; *Vandenburgh* v. *Van Bergen*, 13 Johns. 212; *Corning* v. *Troy Iron & Nail Factory*, 40 N. Y. 191; *Webb* v. *Portland Manuf. Co.* 3 Sumner, 189; *Pratt* v. *Lamson*, 2 Allen, 275, 287; *Miner* v. *Gilmour*, 12 Moore P. C. 131, 156. The claim of the petitioners that at least they had the right to dispose of half of the waters running in the brook, as an article of merchandise, was based on their ownership of one bank of the stream; and the court properly ruled to the contrary. Such ownership did not give them the right to withdraw and dispose of one half of the running water, to the injury of the public landing.

The petitioners now contend that they could sell the right to take all the water flowing in the brook at high tide; but the bill of exceptions does not show that this point was called to the attention of the presiding judge, and no ruling was asked that it should be left to the jury to determine whether at any stages of the tide, and, if so, at what ones, the water of the brook might be wholly or partially withdrawn without impairing the rights of the public in the landing, or how much might be so withdrawn. The ruling given was in reply to the instruction asked, namely, as to the right to dispose of at least one half of the water; and this, as we understand it, had no special reference to the petitioners' rights as affected by different stages of

the tide, but only as affected by their ownership of land upon the stream.

2. The damages must be measured by the market value of the land at the time it was taken ; not its value to the petitioners, nor to the respondent; not the value which it might have under different circumstances from those then existing. The petitioners were not entitled to swell the damages beyond the actual fair market value of the land at the time, by any consideration of the chance or probability that, in the future, authority might be acquired, by legislation or purchase, to carry the water in pipes to neighboring towns. Such chance or probability must needs enter to some extent into the market value itself; and, so far as the market value might be enhanced thereby, the petitioners were entitled to the full benefit of it. If there were different customers who were ready to give more for the land on account of this chance, or if there were any other circumstances affecting the price which it would bring upon a fair sale in the market, these elements would necessarily be considered by the jury, or by a witness, in forming an opinion of the market value. Nevertheless, the value for these special and possible purposes is not the test, but the fair market value of the land in view of all the purposes to which it was naturally adapted. *Cobb* v. *Boston*, 112 Mass. 181. *Lawrence* v. *Boston*, 119 Mass. 126. *Drury* v. *Midland Railroad*, 127 Mass. 571, 584.

The petitioners appear to have asked for something more than this, and they sought to show what was its fair market value for a storage basin to the respondent, and what was its fair market value for a storage basin for supplying Newburyport or any of the adjacent towns with water by pipes carried thereto; and they requested an instruction that its market value as a storage basin for the storage of water for the respondent, or for any other parties, was to be considered by the jury in estimating the damages. In these ways it was sought, as we understand the bill of exceptions, to have the special value of the land to the respondent considered, or some other test adopted, or element included, than the fair market value of the land, in view of all the circumstances which then existed. The bill of exceptions does not show that the petitioners were deprived of the full benefit of the true rule of damages, as above expressed. If

the instruction requested included more than this, the refusal to give it was right. If it did not, no exception lies to the refusal of the judge to adopt the precise language of the request.

*Exceptions overruled.*