PROVIDENCE AND WORCESTER RAILROAD COMPANY *vs.*
CITY OF WORCESTER.

Worcester.   September 28, 1891. — November 25, 1891.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Eminent Domain — Railroad Land — Taking by City — Measure of Damages
— Evidence.*

Upon the assessment of damages for the taking by a city of land therein for the construction of sewage works, under a special statute, from a railroad corporation, whose road extends from such city through a considerable section of this State to a point in another State, the corporation is not entitled to claim damages to its entire railroad plant.

On the issue of the value of land taken by a city, an agreement between the city and the owner of adjoining land also taken, with whom negotiations respecting the price are still pending, is inadmissible in evidence.

The wrongful exclusion of evidence at one stage of a trial is cured by its admission at a later stage, and affords the party offering the same no ground of exception.

On the assessment of damages by a jury for the taking, by a city, of railroad land, capable of use as a gravel pit, but not in such use when taken, the allowance of questions as to the market price of the gravel as merchandise, the cost of transportation, and the demand and supply, lies in the discretion of the judge presiding at the trial.

On the assessment of damages by a jury for the taking of land by a city, the price, cost of handling, and the demand and supply of an article of merchandise, which may or may not be wrought out of the land by labor which must necessarily be continued for some considerable length of time, during which the care and management of the property and the expense of holding it are uncertain but important elements in the value of the commodity when it reaches a market, cannot be said, as matter of law, to be so decisive of the value of the land as to make them competent evidence; and questions respecting the same are to be admitted or rejected in the discretion of the judge presiding at the trial.

At the trial of a petition for the assessment of damages for the taking by a city, for the construction of sewage works, of land capable of use as a gravel pit but not in such use when taken, the jury were instructed, in substance, that in computing the damages the value of the land for a special purpose was not the test, but its fair market value at the time of taking, considering all the uses to which it was adapted or applicable; and that the damages were not to be measured by its value to the petitioner nor to the city, nor by what it might have been under different circumstances from those then existing. The presiding judge, among other things, remarked, "The value of the gravel in the pit was not substantial evidence on the question of damages, but was to be considered in connection with evidence as to the value of the land as a source of sand and gravel supply"; and also that they were not to take into consideration the value of the land to the city for sewage disposal, evidently meaning at the time of the trial, when the works were completed. *Held,* that the petitioner had no ground of exception.

PETITION to the Superior Court, under the St. of 1886, c. 331, § 2,* for a jury to assess damages caused by the taking by the respondent city of land of the petitioner. Trial before *Staples*, J., who excluded certain evidence offered by the petitioner, and refused to give certain instructions requested by it, and, after a verdict assessing the petitioner's damages at the request of the petitioner which was dissatisfied with the amount thereof, reported the case for the determination of this court.

If the evidence excluded, so far as material, should have been admitted, or the instructions requested should have been given, or if those given were not correct, the verdict was to be set aside and a new trial granted; otherwise, the verdict was to stand. The facts appear in the opinion.

*W. A. Gile*, for the petitioner.

*F. P. Goulding*, for the respondent.

BARKER, J. This was an assessment, by a jury in the Superior Court, of damages for the taking, on October 9, 1888, of land for the construction of sewage works under the St. of 1886, c. 331.

In the land taken were some 74,500 cubic feet of gravel, such as was sold in market by the yard, and suitable for the construction of the works which the city had in fact built upon the land after the taking.

The petitioner's railroad extends from Worcester through a considerable section of this State and of Rhode Island, to Providence. The petitioner owned adjoining land not taken, of similar material, and was permitted to show the quantity of gravel upon the land taken, and upon the remaining land, and to what depth it could be taken off, what it was suitable for, the means of access to it, and that the only way of getting to the remaining land was by going over that which was taken. The peti-

---

* This statute, entitled " An act to establish a system of sewage disposal for the city of Worcester," in § 1, authorized that city to take such lands, water rights, rights of way or easements as were " necessary for the establishment of such system of sewage disposal," and, in § 2, provided that the city should pay all damages sustained by any person or corporation by reason of such taking, which in case of disagreement were to be assessed by a jury, on a petition to the Superior Court filed within a certain time " from the taking of such land or other property, or the doing of injury under the authority of this act."

tioner also introduced evidence to show the market value of the land taken and the purpose for which it could be used, and that the gravel was available to the railroad for filling, ballasting, concreting, and mason work, and that its quality for all these purposes was very good.

During the introduction of the petitioner's evidence the following questions were asked on direct examination, and excluded under the petitioner's exception : 1. What was the market value of the same kind of gravel, October 9, 1888, as in its then condition of. land?  2. State the cash market value of the gravel per yard at time of taking.  3. How did the taking of this gravel pit from the road affect the railroad plant?  4. Whether this gravel pit was available in connection with the railroad plant as gravel?  5. Is there any other bank of gravel or means of obtaining gravel for this plant in the city of Worcester?  6. What is the nearest supply of gravel outside of this?  7. Was the railroad prevented from continuing the work of filling Cambridge Street, two miles distant, by taking this gravel?  8. Was the gravel pit and where the gravel was to be put within yard limits?  9. Whether (the witness being the petitioner's engineer and road-master) he had done filling in the Worcester yard? 10. What was the expense of hauling gravel from the pit to Worcester to the yard where you are filling and grading?  11. Was the road prevented from filling and grading its yard in South Worcester by this taking?  12. Was gravel needed to fill and grade that area when this land was taken?  13. Was there any other available supply of gravel in Worcester when this was taken?  14. What was the value of that gravel per yard when taken in the bank where it lay?  15. What was the value of this gravel situate as it is, in connection with its use in making cement?  In cross-examination the petitioner was not allowed to show the value of gravel per yard as an article of merchandise, or to put the question, " What agreement did the city make with Tatman for payment for taking his land, — nine tenths of an acre adjacent to railroad?" — it appearing, however, that the negotiation with Tatman was still in progress, and that no deed had been given.  Witnesses for the respondent testified as to the value of the land, some without taking account of the gravel, and others taking account of it, and one who included the gravel

in his estimate said, upon cross-examination, that people gave from twenty to thirty cents a square yard for gravel for filling. After the respondent's evidence was closed, the petitioner was permitted to show the fair market value of the gravel in the bank where it lay at the time of the taking, and called one witness who testified upon that point, and was allowed opportunity to call other witnesses to the same point, but did not choose to put in more testimony. In excluding the first of the questions asked as to the market value of the gravel, the court stated that it was upon the ground that the petitioner was not entitled to the value of the gravel as merchandise, and the other similar questions were excluded for the same reason.

The petitioner asked the court to instruct the jury as follows:

" In taking the land and gravel pit from the petitioner, the damage to the remainder of the petitioner's railroad plant should be considered, and estimated by the jury in their estimation of the damages sustained by the taking.

" The uses for which the land taken was adapted, as a gravel pit for the railroad and for the defendant city, are both to be taken into account by the jury in their estimation of the fair market value of the land taken upon which the gravel was situated.

" The availability and location, in connection with the other property and the plant of the Providence and Worcester Railroad, are to be taken into account in estimating the value of the land and the gravel upon it by the jury.

" That the actual market value of the gravel, located as it was when taken by the city from the road, in October, 1888, is to be considered in their estimate of the market value of the whole land taken."

The court declined to give the instructions, as prayed for, but instructed the jury that the evidence of the value of the gravel in the pit was not substantive evidence on the question of damages, but was to be considered in connection with evidence as to the value of the land as a source of sand and gravel supply. The court further instructed the jury: " The petitioners were not entitled to swell the damages beyond the actual market value by any consideration of its special use. Now, upon the general subject, how are you to compute the damages? You are to determine what was the fair market value of the land taken by

the city. In determining this the jury ought to determine its capabilities, and the purposes for which it may be used, and also that, under the statute, the title to the land was vested in the respondent. The value is to be assessed according to its value when taken, having regard to the uses to which it may probably be applied. The point to which I want to call your attention is the following extract from the opinion in that case, [*Moulton* v. *Newburyport Water Co.* 137 Mass. 163, 167,] which I adopt as the law in this case: 'The damages must be measured by the market value of the land at the time it was taken; not its value to the petitioners, nor to the respondent; not the value which it might have under different circumstances from those then existing.' The value for a special purpose is not the test, but the fair market value of the land in view of all the purposes to which it was naturally adapted. That must be the rule here. I do not suppose it is competent for you to take into consideration, in computing these damages, the value of this land to the city for sewage disposal and improvement. There has been evidence how the city are using it, how advantageous the city has found it to be for certain purposes; but the law says, it is not the value to the city, and neither is it the value to the petitioners, that is to govern, but the fair market value of the land in view of all the purposes for which it was naturally adapted. It would be for you to take this in reference to this gravel pit, as it has been called, this piece of sold land which is claimed to be substantially a gravel bank. It would be entirely proper for the jury to say, in deciding this case, what were the purposes to which it was naturally adapted, or, if there was but one, what was the purpose for which it was naturally adapted. What were the uses to which it might properly be applied, or what was the use to which it might properly be applied? It is for the jury to say, in view of such use or uses, in view of such purpose or purposes, what would be the fair value of it. You are to form an estimate of the value under all those circumstances. It is not for the city to pay for the benefit, in the sense that it is of a peculiar value to them. The city is not to pay damages based on its value to them, in any peculiar sense, but they are to pay the fair value of the land, in view of all the uses and purposes to which it is naturally adapted."

1. The measure of damages was the value of the property taken, and the additional injury, if any, done to the remaining property of the petitioner. The property here taken was land, and the additional injury claimed was to some of the petitioner's adjacent land not taken, and also to its whole plant, extending from Worcester to Providence. The petitioner was allowed to show the damages to its adjacent land, access to which was over the part taken, and forming substantially one parcel with it, but was not allowed to show or recover damages to its plant as a whole. To have done so would have involved the question of the value of the whole of the petitioner's road before and after the taking, and under the circumstances of the case would clearly have been absurd. It is plain that the land taken and the adjacent remaining parcel injured bore no such integral and substantial relation to the whole railroad that their severance from it would occasion any consequential damage. The taking of a terminal station, or of some connecting line, or of an integral and important portion of the road, which could not readily be replaced, and the loss of which would sensibly interfere with the successful operation of the whole, might support a claim for damages to the plant; but the loss of less than three acres of land outside of the location, and adapted for railroad use only as a gravel pit or track yard, would clearly be measured by the value of the land taken and the diminution in value of the rest of the parcel. The statute under which the city acted contained no specific authority to take property already devoted to public use. By instituting these proceedings rather than a bill in equity or an action of tort, the petitioner admits that its true position is that of an ordinary landowner, and not that of a quasi public corporation whose means of serving the public have been impaired so as to affect the value of its whole plant. The court was therefore right in refusing to allow the jury to assess damages to the whole plant, and in excluding evidence which tended only to prove such damages.

2. The agreement between the city and an owner of land taken adjoining that of the petitioner was properly excluded, both because the negotiation had not been completed, and because a price so fixed is not a reasonable or fair test of market value. *Cobb* v. *Boston*, 112 Mass. 181, 184.

3. The petitioner was not injured by the exclusion of the other questions. The property taken was land. The value to be ascertained by the jury was the value of real estate. The land was capable of use as a gravel pit, but was not in such use when taken. The questions excluded called for evidence, not only of the value of the gravel as it lay in the bank, but of the market value of gravel delivered in the city, the cost of transportation, and the demand and supply. The petitioner was allowed to go fully into the question of the nature and quality of the material and its adaptability for any beneficial use, and was given ample opportunity before the close of the evidence to show the fair market value of the gravel at the time of taking in the bank where it lay. He availed himself of this opportunity so far as he desired, and cannot now urge his exceptions to the exclusion of such evidence at an earlier stage of the trial. *Hawes* v. *Gustin*, 2 Allen, 402. *Eldridge* v. *Hawley*, 115 Mass. 410. Whether the questions as to the market price of gravel as merchandise, the cost of transportation, and the demand and supply, should be allowed, was fairly within the discretion of the presiding justice. The subject of inquiry by the jury was primarily, not the value of gravel, but of land. The price, the cost of handling, and the demand and supply of an article of merchandise, which may or may not be wrought out of the land by labor which must necessarily be continued for some considerable length of time, during which the care and management of the property and the expense of holding it are uncertain but important elements in the value of the commodity when it reaches a market, cannot be said, as matter of law, to be so decisive of the value of the land as to make them in all cases competent evidence. Such questions are to be admitted or rejected in the discretion of the justice who sits at the trial; those excluded in the present instance called for evidence so remote from the value of the land that they might in the discretion of the presiding justice be properly excluded.

4. Aside from the claim of damage to the plant, the instructions asked dealt only with subjects which were treated of in the charge. If the instructions given were correct, the petitioner was not harmed. *Randall* v. *Chase*, 133 Mass. 210. The instructions so far as shown by the report are recited above. In

giving them, the court read from the opinion in *Moulton* v. *Newburyport Water Co.* 137 Mass. 163. Taken as a whole, the instructions state correctly and with sufficient clearness and fullness the elements of damages and the manner in which they should be considered by the jury. The jury were told, in substance, that in computing them they were to determine the fair market value of the land at the time of taking; that they were to take into account its capabilities, and the purposes for which it might be used, and to proceed in view of all the uses and purposes to which it was naturally adapted, or to which it might probably be applied, and that they were to form their estimate of its value under all those circumstances; that the damages were not to be measured by its value to the petitioner nor to the city, nor by the value which it might have under different circumstances from those then existing, and that the value for a special purpose was not the test, but its fair market value in view of all the purposes to which it was naturally adapted. The expression " that the evidence of the value of the gravel in the pit was not substantive evidence on the question of damages," if capable of being misunderstood stated as an independent proposition, was sufficiently qualified by the other part of the sentence, which states that it " was to be considered in connection with evidence as to the value of the land as a source of sand and gravel supply," and by those portions of the charge which repeatedly directed the jury to consider all the uses to which the land was adapted or might be applied.

The direction that it was not competent for them to take into consideration the value of the land to the city for sewage disposal and improvement, construed with what immediately preceded and followed, clearly meant its value at the time of the trial, when it had been improved with structures and adapted for the disposal of sewage, and did not prevent the jury from considering any value which the land had at the time of taking due to the fact that it might be used for the disposal of sewage. Upon the whole charge, the value of the land in view of every possible use was fairly left for the consideration of the jury.

No error prejudicial to the petitioner appearing, the verdict is to stand, and the order will be,

*Judgment on the verdict.*