CITY OF CUSHING v. BUCKLES et al.

No. 17564. Opinion Filed Nov. 27, 1928.

Rehearing Denied Jan. 5, 1929.

S. J. Berton and Embry, Johnson & Tolbert, for plaintiff in error.

L. G. Lewis, for defendants in error.

BENNETT, C. The city of Cushing required certain lands upon which to erect a reservoir for its waterworks, and this suit was filed by the city to condemn for that purpose about 50 odd acres of land belonging to Mrs. Rosa M. Buckles and Harry Buckles, defendants. The land is described in detail in the petition by proper metes and bounds. Soon thereafter an answer was filed and commissioners were appointed to make appraisement. The report of their proceedings shows that on January 13, 1925, they appraised the land taken at $4,630. and the damages to the remaining part of the tract at $2,046.60. The award of the commissioners was excepted to both by plaintiff and defendants, and the case therefore went to trial before a jury October 14, 1925.

After the introduction of all evidence and instructions by the court, the jury found a verdict for the defendants for $10,000, and thereafter plaintiff filed its motion for new trial upon six grounds: First. Excessive damages. Second. Error in the assessment of the recovery. Third. The verdict is not sustained by sufficient evidence, and is contrary to law. Fourth. Errors of law occurring at the trial. Fifth. Error in the court refusing requested instructions numbered 1, 2, 3, 4, 5, 6, and 7. Sixth. Error of the court in giving instructions numbered 1, 6, 7, 9 and 10. Upon consideration of the motion the same was overruled, and the case is appealed here for review by plaintiff.

The pleadings in the cause are in the usual form in such proceedings and since no alleged error is based thereon, a detailed statement of the allegations therein is not essential to the proper disposition of this case.

The defendant Rosa M. Buckles is the owner or the 160 acres out of which the land sought to be condemned is carved. The 160 acres lies in an L-shape, being the north half of the northeast quarter and the east half of the northwest quarter of section 33, township 18 north, range 4 east. The first 80 is traversed by Big Creek which enters this 80 on the north boundary and runs in a southeasterly direction through said tract. The basin of this creek is used by plaintiff for reservoir purposes. There is east of the creek a small portion of this land, which is not sought to be condemned, and which is made practically inaccessible by reason of the fact that the reservoir will intervene between that portion and the remainder of the 160 acres on the west. It might be added that this land is in oil and gas territory, as the proof shows, and that there are several oil and gas wells in close proximity; in fact, there are a number of producing wells within a range of two or three miles of the premises, and also there have been found dry holes in several locations equally near. It was shown that this creek furnished a constant supply of fresh water which had always been used by defendants for their cattle and live stock, and for general farm purposes; that there was timber along the creek and on the lands condemned, consisting of walnut. pecan, elm, etc., sufficient for fuel and farm purposes: that there was enough walnut timber to make 1,000 or 1,500 posts, and also a small amount of merchantable timber. It was shown that the farm would be deprived of the benefit of fresh water which had theretofore been accessible from this creek. There

was also proof to the effect that the occupants of the land were accustomed to receiving their mail at a point convenient to the residence on the farm, but due to the placing of the reservoir thereon, the enjoyment of this privilege would be interrupted, and their mail would have to be gotten from a point much further away.

There is introduced on behalf of plaintiff considerable evidence as to the market value of the land sought to be condemned, and also as to the damages incident to this taking, and suffered by the remaining portion of the lands owned by defendants.

We shall not attempt to here set out in detail this evidence, for while the testimony introduced on behalf of each of the parties hereto is widely divergent, nevertheless, it is equally true that the evidence of various witnesses on behalf of plaintiff does not differ greatly, nor does the evidence on the part of witnesses for the defendants seemingly shown any greater latitude of divergence. For example, Mr. J. A. Clingenpeel, a real estate man living at Stillwater, testified for the plaintiff that the entire farm was worth about $50 an acre, but that the part condemned was worth from $100 to $125 per acre, and that, in addition, the strip cut off from the east end of the 80 upon which the reservoir is built, which contains perhaps ten acres, is rendered entirely valueless, and that the remaining part of the farm is then worth only $30 to $35 per acre, due to the lessening of the value thereof by reason of cutting off the land in question. The testimony of this witness may be taken as a fair example of practically all of the testimony of plaintiff, and there is evidence of eight or ten other witnesses of similar import.

The substance of the testimony on the part of defendants may be understood by quoting from the testimony of John A. Raines, a farmer, living a mile and a half east of Ripley, who has lived in the community since 1892. He says that he has known this farm since he moved into the neighborhood; that the reasonable fair market value of the land actually taken was from $250 to $300 per acre, and that the value of the entire 80 upon which this reservoir is located will be lost; that this land will produce from four to five tons of alfalfa; that there are on the farm only about 60 acres that will raise alfalfa, almost all on the lands taken; that he went over the lands and made an estimate of the lumber; that there were trees on the land sufficint to make 1,000 walnut posts, 1,250 feet of commercial walnut timber, and that besides there were elms, sycamore, oaks, etc.; that the walnut posts were worth 20 cents apiece, and the walnut lumber was worth $90 per thousand on the stump. There are 12 or 14 other witnesses whose testimony is of about the same nature as to the value of the land. There are rather wide differences as to the damage to the remaining land ranging from $10 to $30 per acre, and there is evidence that this land has a certain small value for mineral purposes.

Plaintiff in error for reversal argues a number of assignments of error. We think, however, that the merits of this controversy may be disposed of by considering one of such assignments with simply a brief reference to the others. Plaintiff in error contends that the court gave no clear-cut instruction as to the measure of damage. This, as we see it, is crucial in a condemnation proceeding. The parties apparently agree that the measure of compensation is the market value of the property actually taken, and damage for the depreciation of the value suffered by the remainder under the holding in City of Cushing v. Sarber, 92 Okla. 59, 217 Pac. 866, and Sallisaw v. Priest, 61 Okla. 9, 159 Pac. 1093, but the contest between the parties arises over the question as to whether the court correctly applied the above doctrine in this case, the defendants contending that the court in his instructions to the jury followed the measure of value set out above, and that the entire charge should be taken as a whole, and that, even though there were some inaccuracies in the charge, the same would not constitute reversible error if the matter were fairly presented to the jury, and they cite Snyder v. Stribling, 18 Okla. 168, 89 Pac. 222; Grant v. Milam, 20 Okla. 672, 95 Pac. 424; Wellman v. Ore., S. L. Ry. Co., 21 Ore. 530, 28 Pac. 625; and M., O. & G. Ry. Co. v. Smith, 55 Okla. 12, 155 Pac. 233. This would be correct, and the authorities so hold, if, after considering the entire charge, it reasonably appears that the jury was not misled, but, in the case at bar, upon examination of the instructions actually given, we find the court gave, over exception by plaintiff, instruction No. 7, which is as follows:

"You are instructed that in arriving at the damages sustained by the defendants as a result of the appropriation of their land for a reservoir, that it is proper for you to consider the total value of the entire tract of land before the same was entered upon by the plaintiff, and this value would be the

market value which is the fair value as between one who wants to purchase and one who wants to sell, not what could be obtained for it under peculiar circumstances when a greater value than its fair price could be obtained, nor its speculative value, nor a value obtained from the necessity of another; its present value at a sale which a prudent owner would make if he had the power of election as to the time and terms; the amount for which it would actually sell at the time, not what it might bring or ought to bring at some future time, such a sum as it is fairly worth on the market, not its value at a forced sale; **not merely the value of the owner, but to the person seeking to condemn it.**"

It will be observed that the first part of this instruction is substantially correct and in keeping with the current weight of authority. 10 R. C. L. p. 128, par. 112; Little Rock Junction Ry. Co. v. Woodruff, 49 Ark. 381, 5 S. W. 792. But the last phrase, "not merely the value to the owner, but to the person seeking to condemn it," is manifest error, and tends to confuse the jury. In Lewis, Eminent Domain (3rd Ed.) pp. 1227-31, par. 706, the author says:

"In estimating the value of property taken for public use, it is the market value of the property which is to be considered. (Citing San Diego L. & T. Co. v. Neale, 78 Cal. 63, 20 Pac. 372, and a host of other citations shown in note 93). The market value of property is the price which it will bring when it is offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who is under no necessity of having it. (Citing Santa Anna v. Brunner, 132 Cal. 234, 64 Pac. 287, and many cases cited in note 94.) In estimating its value, all the capabilities of the property, and all the uses to which it may be applied or for which it is adapted, are to be considered, and not merely the condition it is in at the time, and the use to which it is, then applied by the owner. (Citing Little Rock Junction Ry. Co. v. Woodruff, 49 Ark. 381, 5 S. W. 792, and cases cited under note 96.) **It is not a question of the value of the property to the owner.** (Citing West Chicago Park Com'rs v. Boal, 232 Ill. 248, 83 N. E. 824; Decatur v. Vaughan, 233 Ill 50, 84 N. E. 50; Louisiana R. & N. Co. v. Jones, 113 La. 29, 36 So. 877; Providence & W. R. R. Co. v. Worcester, 155 Mass. 35, 29 N. E. 56; St. Louis, etc., R. R. Co. v. Knapp, Stout & Co., 160 Mo. 396, 61 S. W. 300; Cane Belt R. R. Co. v. Hughes, 31 Tex. Cir. App. 565, 72 S. W. 1020; In re Rugheimer, 36 Fed 376). * * * **On the other hand, the damages cannot be measured by the value of the property to the party condemning it,** nor by its need of the particular property. (Citing Selma, etc., R. R. Co. v. Keith, 53 Ga. 178; Atlantic Coast Line R.

R. Co. v. Postal Tel. Cable Co., 120 Ga. 268, 48 S. E. 15; Molton v. Newburyport Water Co., 137 Mass. 163; Providence & W. R. R. Co. v. Worcester, 155 Mass. 35, 29 N. E. 56; Sargent v. Merrimac, 196 Mass. 171, 81 N. E. 970; Union Depot Street Ry. & Transfer Co. v. Brunswick, 31 Minn. 297; Virginia & Truckee R. R. Co. v. Elliott, 5 Nev. 358; United States v. Honolulu Plantation Co., 122 Fed. 581, 58 C. C. A. 279.)"

See, also Blincoe v. C. O. & W. R. R. Co., 16 Okla. 286, 83 Pac. 903.

"In determining market value, the value of the property to the owner, or the value which he places on it, cannot be considered. * * *" 20 C. J. p. 728, and cases cited from many states under note 33.

"Compensation must be reckoned from the standpoint of what the landowner loses by having his property taken, **not by the benefit which the property may be to the other party to the proceedings.** * * *" 20 C. J. p. 776, citing cases from United States, California, Georgia, Iowa, Illinois, Kentucky, Minnesota, Mississippi, Missouri, New Jersey, New York, and others.

"Therefore the value of a particular piece of land to a person or corporation exercising the right of eminent domain, * ** cannot be considered as an element of damage to the owner." 20 C. J. p. 776, and cases cited under note 7.

This doctrine has been followed in Eichman v. Oklahoma City, 84 Okla. 20, 202 Pac. 184, wherein the judgment of the court refers with approval to the general doctrine laid down in San Diego, L. & T. Co. v. Neale (Cal.) 25 Pac. 977, as follows:

"On condemnation of land for public use, the present market value, and not the value to the owner, or to the person seeking to condemn it, is the basis of compensation."

In the opinion in this last case, there is cited the text from 15 Cyc. 685, as follows:

"* * * Such a sum as it is fairly worth in the market, not its value at a forced sale; not merely the value to the owner or to the person seeking to condemn it."

The use of the word "merely" in the above quotation would seem to indicate that the value to the owner might be taken into consideration, as well as the value to the person seeking to condemn along with other evidence, but this, in the ordinary case, is against the current of authority, and we doubt if the cases referred to as supporting the text are authority for this position. At any rate our court has spoken clearly on the matter, and they hold with the great weight of authority on the subject.

It is true that the court instructed the jury that the measure of recovery must be the market value of the land, but this was simply contradictory of that portion of instruction 7 referred to above, and we are unable to tell, or course, whether the jury followed the correct or the incorrect rule furnished by the court. Pittsburg Co. Ry. Co. v. Hasty, 106 Okla. 65, 233 Pac. 218; Bailey v. Citizens Bank of Meeker, 118 Okla. 118, 247 Pac. 42; Watkins v. Huff, 101 Okla. 5, 222 Pac. 693; Gourley v. Jackson, 116 Okla. 30, 243 Pac. 243. All these authorities hold that an erroneous instruction is not cured by a proper one in conflict therewith, for the court is not able to tell which was adopted by the jury.

Plaintiff in error also urges that there was error in the admission of incompetent, irrelevant and immaterial testimony, in that Harry Buckles was permitted to testify that, before the taking of the reservoir site, he was accustomed to getting his mail at his house door on the farm, and that since the property was taken by the city he was obliged to receive his mail at a point one-half mile west. We think this was one of the inconveniences about which testimony might properly have been received, provided the facts are fully developed, and we would not be disposed, nothing else appearing, to regard this as reversible error. 10 R. C. L. 155; U. S. v. Welch, 217 U. S. 333, 54 L. Ed. 787; U. S. v. Grizzard, 219 U. S. 180, 55 L. Ed. 165.

Again, it is suggested that a prior easement existed in a part of the land actually taken by the city as a part of its reservoir, and that the court omitted, upon timely request, to instruct the jury with reference thereto. If the evidence showed the existence of such an easement, and that the same decreased the market value of the fee, this should have been taken into account by the jury in determining the amount of the award, under proper instructions by the court. 10 R. C. L. p. 132, par. 116; Brown v. W. T. Weaver Power Co., 140 N. C. 333, 52 S. E. 954, 3 L. R. A. (N. S.) 912.

It was also complained that the court's charge was unfair, in that it permitted the jury to take into consideration, the actual value of the land for farming, for grazing and for oil purposes, and also that the court permitted the jury to consider the actual value of the timber and trees cut from such land. We think, perhaps, the charge was not as clear in respect to these matters as it should have been. It was entirely proper for the jury to consider the adaptabilities of this land for agricultural, mining, and grazing purposes, and also the fact that there was timber standing upon the land condemned, provided the evidence disclosed these facts, but such facts and circumstances should have been considered only in so far as they materially affected or threw light upon the crucial inquiry in the case, to wit, the cash market value of the land, and not for the purpose of furnishing separate items to be compensated for in addition to the market value of the land taken. It is quite possible that the jury, under the instructions of the court in this case, correctly understood the purpose of this testimony, but it is not very clearly defined in the charge. At any rate, in another trial, these questions are not likely to arise.

Since it appears that there was a clear error in the charge of the court on a very material issue, the effect of which upon the jury we are unable to determine, and for the other reasons given, and upon the authorities cited herein, we hold that there was reversible error, and therefore the cause is remanded for a new trial.

TEEHEE, DIFFENDAFFER, JEFFREY, and HERR, Commissioners, concur.

By the Court: It is so ordered.