BARNSDALL OIL CO. v. RICKS.

No. 24300. Dec. 3, 1935.

Rehearing Denied Jan. 14, 1936.

Jack Paden, for plaintiff in error.

M. A. Dennis, for defendant in error.

PER CURIAM. This action was begun in the district court of Okmulgee county, Okla., November 10, 1931, by defendant in error, as plaintiff, and hereinafter referred to as plaintiff, against plaintiff in error as defendant, and hereinafter referred to as defendant, to recover damages to real property, part of a tract of 68-4/7 acres in such county, formerly belonging to one W. S. Mackey, the title to which plaintiff acquired through foreclosure of a mortgage, alleged to have been caused by the overflow of oil, salt water, base sediment, waste oil, and other poisonous and deleterious substances, allowed by defendant to escape from an oil leasehold belonging to and operated by it in the vicinity, after settlement for previous damages and the execution of a written agreement, of the date of September 26, 1923, between plaintiff and Mackey, as parties of the first part, and defendant as second party, providing in part:

"It being the intention of the parties to settle by the payment of said eight hundred dollars ($800) any and all claims for damages which have accrued to the said Mackey and the said Ricks, or either of them, and to said land and said security at the date hereof, and in consideration of said payment and acceptance of said eight hundred dollars ($800), it is further agreed that in case the said Mackey and Ricks, or either of them, or the heirs or assigns of either of them shall claim damages in the future to said land, or damages of any other nature whatsoever by reason of the lease operations of the said Waite Phillips Company and Barnsdall Company, or either of them, or their successors or assigns in the vicinity of said land, that the same shall be arbitrated, and in so doing each side shall appoint an arbitrator, and the two so appointed shall appoint a third disinterested arbitrator, and the three shall investigate and assess the damage, if any, or make a finding of no damage, if such be the fact, and their decision shall be final."

The petition alleging further that defendant has since the date of such contract operated its oil wells on its mentioned leasehold, and ever since the signing of such contract, up to and including the years 1929, 1930, and 1931, produced large quantities of salt water, base sediment, waste oil, and other poisonous and deleterious substances, which have been permitted by defendant to escape and flow into a natural water course or ravine which traverses plaintiff's premises, and that salt water, base sediment, waste oil, and other poisonous and deleterious substances so permitted to flow into said small ravine have overflowed and spread out over plaintiff's premises so as to completely destroy and inundate during the rainy and wet seasons approximately 30 acres thereof, which was prior thereto fertile bottom land, and having thereon 100 bearing pecan trees and several oak, elm, and other mature trees, valuable for manufacturing into lumber; and that by reason of such overflow the pecan trees, the other trees, timber and vegetation thereon have been completely killed and destroyed, to plaintiff's damage in the sum of $2,500; and destroyed the fertility and productiveness of plaintiff's premises to the extent of said 30 acres, all of the value of $485, —all to the actual damage of plaintiff in the sum of $2,995.

Defendant answered admitting its corporate character and denying the other averments of the petition, and averring that the mentioned contract was void, and that the cause of action did not accrue to plaintiff within two years next preceding the commencement of the suit, and that the cause of action was barred by the statute of limitation.

Plaintiff's evidence tended to show the detriment complained of by proof touching the intrinsic value of the pecan trees alleged to have been destroyed, and other effects upon part of the land; but not the market value of the premises before the injury or the market value of the premises after the injury, or the difference of such values, except by the evidence relating to the specific

value of such pecan trees and the effect upon the part of the premises alleged to have been flooded.

Defendant objected to the introduction in evidence of the agreement mentioned, but since it was relevant to the issue of limitation, it was properly admitted.

At the conclusion of plaintiff's evidence. defendant demurred to such evidence; but the demurrer was overruled and exception taken, whereupon defendant introduced its evidence, including, among other facts, evidence as to the value of the land claimed to have been injured, both before and after the injury; which evidence was followed by evidence of plaintiff in rebuttal. The instruction of the court, and a verdict of the jury finding for plaintiff in the sum of $1,500, for which judgment was rendered.

Defendant assigned as error the overruling of its demurrer to the evidence in chief of plaintiff, but as the ruling on the demurrer was followed by evidence of defendant and rebuttal evidence of plaintiff touching the issues determined by the verdict, and the demurrer was not renewed at the conclusion of all of the evidence nor the sufficiency of the evidence challenged by motion or otherwise, error, if any, in overruling the demurrer to the evidence is not reviewable. Marland Refining Co. v. Harrel, 167 Okla. 548, 31 P. (2d) 121; Hinshaw v. Brannon, 163 Okla. 225, 22 P. (2d) 74; Seidenbach's Inc. v. Muddiman, 155 Okla. 61, 7 P. (2d) 471; Local Building & Loan Ass'n v. Hudson-Houston Lbr. Co., 150 Okla. 44, 3 P. (2d) 156; Stanfield v. Lincoln, 150 Okla. 289, 1 P. (2d) 387; Abraham et al. v. Gelwick et al., 123 Okla. 248, 253 P. 84.

The court, in separate instruction, separately submitted the two items of damages claimed, one for the destruction of the pecan trees and the other timber and one for damage to the land.

The court, in its second instruction, charged the jury as follows:

"Gentlemen of the Jury: You are instructed that the burden of proof is upon plaintiff to prove every material allegation of her petition by a fair preponderance of the evidence, and if you believe and find from the evidence that since the signing and execution of the contract between plaintiff and defendant, Barnsdall Oil Company, that there has been killed and destroyed on plaintiff's premises, a large number of bearing pecan trees, to wit, 100, more or less, together with other valuable trees and timber, which pecan trees, timber, and other

trees were killed and destroyed by reason of defendant's permitting salt water, waste oil, base sediment, and other deleterious and poisonous substances to escape from its oil and gas mining leases and flow down the natural water course or creek so as to spread out upon, over and across plaintiff's premises, and by reason thereof, her pecan trees and other valuable timber and trees were destroyed and killed, then it will be your duty to find for the plaintiff in this action in damages for such sum as you may believe and find from a fair preponderance of the evidence herein she has sustained, not to exceed $2,500."

Defendant excepted to this instruction and objected that instead of the court instructing the jury the true measure of damages, which is the difference in the market value of lands before and after the injury complained of, it gave this instruction based entirely upon the trees, without mentioning the lands.

However, the court after submitting the issue of damages to the land in a separate instruction, not discussed in the briefs, gave instruction No. 5, to which no exception was taken, as follows:

"You are instructed in an action for damages to real estate, caused by the pollution of a stream of water running through same, where in addition to poisoning the water of said stream, valuable trees growing along the banks thereof, are destroyed, the measure of damages is the difference between the value of the premises immediately prior to the pollution and after such pollution and destruction of timber."

The issue presented here is whether the pecan trees were susceptible of value measurement apart from the loss of use and impairment of soil of a part of the tract, and other alleged damages to the land. The evidence showed that approximately 100 bearing pecan trees had been destroyed, and the witnesses placed the value of them at from $5 to $25 per tree. There was no evidence of the value of any other class of trees or timber destroyed.

In City of Cushing v. Buckles et al., 134 Okla. 206, 273 P. 346, it was held:

"In condemnation of land for a city reservoir, facts respecting the beneficial uses to which the land may be put, such as farming and mining, and also the circumstance that timber was growing thereon capable of being converted into lumber, may be introduced and considered, but only so far as they affect or shed light upon the market value of the land, and not for the purpose of having each of these beneficial uses fur-

nish an item to be compensated for in addition to the value of the land itself."

In the opinion, 134 Okla. 206, it is said:

"It was also complained that the court's charge was unfair in that it permitted the jury to take into consideration the actual value of the land for farming, for grazing, and for oil purposes, and also that the court permitted the jury to consider the actual value of the timber and trees cut from such land. We think perhaps the charge was not as clear in respect to these matters as it should have been. It was entirely proper for the jury to consider the adaptabilities of this land for agricultural, mining, and grazing purposes, and also the fact that there was timber standing upon the land condemned, provided the evidence disclosed these facts, but such facts and circumstances should have been considered only in so far as they materially affected or threw light upon the crucial inquiry in the case, to wit, the cash market value of the land, and not for the purpose of furnishing separate items to be compensated for in addition to the market value of the land taken. It is quite possible that the jury, under the instructions of the court in this case, correctly understood the purpose of this testimony, but it is not very clearly defined in the charge. At any rate, in another trial these questions are not likely to arise."

The judgment was reversed on other grounds.

In Avery v. Wallace, 98 Okla. 155, 224 P. 515, held:

"Evidence offered on the part of plaintiff to show loss and damage to property which tends to show the actual value of the property immediately before the injury and its actual value immediately afterwards is competent to go to the jury for the purpose of determining the amount of plaintiff's loss and damages.

"An instruction upon the measure of damages to plaintiff's property which advises the jury that the damage, if any, is the difference between the actual value of the property immediately before the injury and the actual value of the same property immediately after the injury, is proper."

In Sinclair Oil & Gas Co. v. Allen, 143 Okla. 290, 288 P. 981, held:

"In an action for damages to real estate caused by the pollution of a stream of water running through same, where, in addition to poisoning the water of such stream, valuable trees growing along the banks thereof are destroyed, if the injury cannot be abated by the expenditure of money or labor, the measure of damages is the difference between the value of the premises immediately prior to the pollution and after

such pollution and destruction of timber. * * *"

In Pulaski Oil Co. v. Edwards et al., 92 Okla. 56, 217 P. 876, it is held that such rule is applicable in the case of permanent damages.

But this court in Carter Oil Co. v. Kerley, 109 Okla. 69, 234 P. 737, and Comar Oil Co. v. Hackney, 119 Okla. 285, 250 P. 93, recognized conditions of permanent partial injury to real property from sources of the kind complained of herein; while in C., R. I. & P. Ry. Co. v. Swinney et al., 60 Okla. 115, 159 P. 484, it is held:

"In an action against a railway company to recover damages for permitting fire to escape from a railway locomotive, resulting in the destruction and injury of growing fruit trees upon the land of plaintiff, evidence as to the value of the trees while growing on the land is competent for the purpose of showing the amount of plaintiff's damage."

In A., T. & S. F. Ry. Co. v. Geiser, 68 Kan. 281, 75 P. 68, held:

"Either of two methods may be adopted in ascertaining the damage caused by the destruction of fruit trees—their value as a distinct part of the land, if susceptible of such measurement, and the difference in the value of the land before and after their destruction; and where both methods are resorted to in the same case the damage must be ascertained by the jury from all the evidence."

In Missouri, K. & T. Ry. Co. v. Lycan (Kan.) 47 P. 526, held:

"A petition which alleges that the plaintiff was the owner of certain lands particularly described, upon which there were standing and growing certain fruit, shade, and ornamental trees, shrubs, and vines, also particularly described, and that the defendant negligently permitted fire to escape from its locomotive, which spread, burned and destroyed such trees, shrubs, and vines, alleges an injury to the freehold. Trees growing on the land of the owner, for fruit, shade or ornament, are part of the realty; and no other facts than these need be stated in the petition to show that they are such. * * *

"In such an action, evidence as to the value of the trees while growing on the land, and as a part of it, is competent for the purpose of showing the amount of the plaintiff's damages. Where a particular thing attached to the soil, and therefore a part of the realty, but which has a distinct value as such, susceptible of definite measurement, is injured or destroyed, the evidence in an action to recover damages

therefor may properly be directed to the value of such specific thing as a part of the land, and, in actions of this kind. is ordinarily the best and most satisfactory evidence. It is only where the damages to one part of the land affect other parts, and are incapable of more definite and direct proof, that the evidence is necessarily confined to proof of the value of the whole tract before and, after the injury, though the actual damages can never, in any case, exceed the difference between such values."

To like effect is Kansas City Ft. S. & M. R. Co. v. Perry (Kan.) 70 P. 876.

In Shell Pipe Line Corporation v. Svrcek (Tex. Civ. App.) 37 S. W. (2d) 297, damages for destruction of pecan trees used and intended to be used as growing pecan bearing trees, cut by a company in constructing a pipe line, testimony as to the amount of pecans gathered from the whole orchard was admitted, not because it showed actual value of trees destroyed, but it was admitted as showing bearing quality and productiveness of the trees destroyed, and as tending to show value, that the trees were at least valuable; and the jury was properly instructed that the measure of damages under the pleading and evidence was the sum in dollars and cents which would fairly compensate the plaintiff for the pecuniary damages suffered by reason of being deprived of such pecan trees for the uses intended for them by him.

Bearing pecan trees, as shown by the evidence in this case, are trees the intrinsic value of which, and the consequent injury to the realty by their destruction, are logically and fairly susceptible of ascertainment as such without taking into account the value before and after their destruction of the land on which they are growing.

From this range of authorities it is obvious that the character of proofs may vary with the varying circumstances, the requirement being to logically ascertain the detriment to the real property involved; and while the method of considering injury to the land and injury to fruit trees thereon as separate items of damages, as in the instant case, is not to be commended, yet as the petition was so constructed, and that is not presented for review, and the case was so tried, we do not perceive that the instruction is erroneous. The submission of the items by separate instruction would not tend to mislead the jury to give double damages.

The court further charged the jury, to which defendant excepted, as follows:

"Gentlemen of the jury: You are further instructed that if you believe and find from the evidence that plaintiff, Ethel Ricks, entered into the contract of arbitration, referred to as 'Exhibit A,' to her petition, and which has been submitted to you for consideration, in good faith and under the terms of which contract all future damages to plaintiff's premises, by reason of the negligence of the defendant permitting salt water, base sediment, waste oil and other refuse to escape from its oil and gas mining leases and flow down and across plaintiff's premises, were to be settled by arbitration, without suit, and that plaintiff in good faith, relied on said contract, and endeavored to secure settlement by arbitration, of her damages, as provided by the terms of said contract of arbitration; and if you further find that by reason of said contract of arbitration, taken into consideration with the acts and conduct of the defendant in connection therewith, plaintiff was lulled into a sense of security which prevented her from filing suit before her claim or a part thereof, was barred by the statute of limitations, and that even though it may appear that any part of the damages of which plaintiff complains was caused more than two years prior to the institution of this action, that by reason of said contract and the defendant's conduct in connection therewith, the defendant Barnsdall Oil Company is estopped from asserting the statute of limitations as a defense to plaintiff's action."

It is not shown that plaintiff delayed for an unreasonable time to commence this action after defendant refused to arbitrate, and the evidence tended to show that the plaintiff did rely on the contract in not instituting her action sooner.

In Empire Gas & Fuel Co. v. Lindersmith, 131 Okla. 183, 268 P. 218, held:

"Where the defendants induced the plaintiff to refrain from bringing a suit by an agreement to arbitrate or settle the damages without suit, and the damaged party relied on said agreement until after his action is barred by the statute of limitations, the defendant will be estopped from asserting the statute of limitations as a defense to said action."

And there is a like holding in Skelly Oil Co. v. Odom, 131 Okla. 183, 268 P. 220.

In Taylor v. Harmon et al., 120 Okla. 145, 250 P. 887, there was no concluded agreement to submit the controversy to arbitration, but merely a submission to the attorneys of the respective parties to consider and advise a plan of settlement, which agreement was never acted on.

Agreements to submit controversies to arbitration do not, as a matter of law, suspend

the statute of limitations, but if a party be induced thereby to delay their suit, the other party is estopped to avail himself of such statute. 57 C. J. 51.

There was no error in the instruction given, and the judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys John Embry, W. R. Bleakmore, and John A. Brett in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Embry and approved by Mr. Bleakmore and Mr. Brett, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and CORN, JJ., concur.