## NATIONAL ZINC CO., Inc., v. CROW et ux.

No. 29485.   April 9, 1940.

Rehearing Denied June 18, 1940.

Application for Leave to File Second Petition for Rehearing Denied July 2, 1940.

*103 P. 2d 560.*

Rowland & Talbott and Alton H. Rowland, all of Bartlesville, for plaintiff in error.

Frank T. McCoy, John R. Pearson, and John T. Craig, all of Pawhuska, for defendants in error.

DANNER, J.   The defendant operates a zinc smelting plant, located about a fourth of a mile west of the city limits of Bartlesville. The plaintiffs operate a farm which is situated southwest of the smelter. The northeast corner of the farm is within approximately a quarter mile of the smelter, and from that point the farm extends to the west for possibly a mile. The plaintiffs have raised livestock on their farm for a number of years, one of their principal activities being that of breeding and raising fine blooded horses. Beginning in the year 1933, the plaintiffs observed that their colts, but not grown horses or other ani-

mals, were afflicted with a serious malady which sometimes proved fatal. From 1933 to 1938, when the action was filed, 16 of their colts died. They recovered a verdict and judgment against the defendant smelter, for the loss of said colts and for loss of use of a part of their farm as pasture, and expenses in connection therewith, on the theory that the damage was caused by the smelter smoke, that is, that the smoke from the smelter was wafted across their land, or onto it, and was either breathed by the colts or settled upon the vegetation, and that poisonous substances in the smoke thus became deposited upon the grass which was eaten by the colts, resulting in their injury and death.

In appealing, the first contention of the defendant is that the trial court erred in permitting the plaintiffs to recover for damages sustained more than two years preceding the filing of suit, and in not limiting the recovery to damages incurred within the two years immediately preceding the filing of the action in conformity to the statute of limitations. Section 101, O. S. 1931, 12 Okla. St. Ann. § 95, subd. 3.

Whether the proposition is meritorious depends upon the question of sufficiency of the evidence to support plaintiff's plea of estoppel of the defendant to rely upon limitations. The trial judge gave the jury an instruction upon the issue of estoppel in this connection, which instruction is questioned by the defendant, but the argument is not so much concerned with the correctness thereof as with the question whether estoppel should have been permitted at all.

The evidence established that as early as 1933, when plaintiffs' colts first became afflicted, the principal plaintiff went to defendant's manager, asserted that defendant's smelter smoke was the cause, and demanded settlement. Plaintiff at that time threatened to file an action for recovery of damages. The defendant persuaded plaintiff to enter into a series of joint experiments, instead of filing an action, the purpose being to determine whether the smelter smoke was causing the injury, and said experiments continued until defendant first refused to pay, a few months before suit was instituted. Although plaintiff testified that defendant promised to pay if he could "lead them to believe" that they were responsible for the loss, the inference reasonably deducible from the evidence is that the experiments themselves, or the result thereof, were to determine the issue; that is, if the experiments reasonably indicated liability, defendant would voluntarily pay for the loss, without the filing of suit. Therefore, instead of filing suit, the plaintiff entered into said joint undertaking with defendant to determine the cause of the injury. In reliance on said agreement the plaintiff from time to time furnished a number of colts to the defendant for examination and experimentation. Some of these colts were shipped to the A. & M. College at Stillwater, and to a veterinary school in Kansas. There they were experimented with, and were killed and autopsies were performed. Plaintiff went so far, in some instances, as to buy colts for this specific purpose, instead of furnishing pure blood colts. Plaintiff stood half the expense of having motion pictures made of some of the colts. Scientists employed by the defendant visited plaintiff's farm from time to time, and he co-operated with them in various time-consuming experiments with the colts and with the land and vegetation. As stated above, these experiments were continuous, and they were jointly engaged in until within two or three months before suit was filed. There can be no doubt that plaintiff was influenced to forego the filing of suit on the strength of defendant's inducing him to continue the experiments. By persuading plaintiff to continue said experiments, and to furnish his colts therefor, and to bear part of the expense, defendant itself was largely responsible for the delay in filing suit, and should not now be heard to take advantage of that fact.

Quoting from the case note to Brown v. Atlantic Coast Line R. R. Co., 147 N. C. 217, 60 S. E. 985, 16 L. R. A. (N. S.) 645, we said in Dickson v. Slater Steel Rig Co., 138 Okla. 238, 280 P. 817, 818:

"The general rule is that a debtor may, by an agreement, either written or oral, waive the statute of limitations, and he will be estopped from pleading the statute as a defense if the creditor, relying upon such agreement, permits the statutory period to expire before bringing suit.

"There is greater difficulty experienced, however, where the acts or words of the debtor do not amount to a full or express agreement. But it appears to be the general rule that a debtor may, although not expressly waiving the statute, be estopped from pleading it as a defense by conduct inducing the creditor to forego his right and delay bringing suit until after the period of limitation. There is some difference of opinion as to just what acts or words, not amounting to an express agreement, will be considered sufficient to estop the debtor, and it would obviously be impossible to formulate a general rule sufficient for every case. A mere request not to sue, however, is generally held insufficient. There must be, in addition to the request, something in the nature of consideration for the delay."

Here the evidence was sufficient to warrant a finding that not only was there either an express or implied request not to sue but that, furthermore, there was "something in the nature of consideration for the delay." In addition, by inducing plaintiff to expend his time and labor, as well as money and property, in jointly carrying on the experiments instead of filing suit, we think there was created a situation whereunder it would be inequitable to hold that the action was barred. As stated by us in the 2d syllabus to the Dickson Case, supra:

"The general rule cannot be applied to all cases, because the debtor may be estopped from pleading the statute, if he induces the creditor to let the period go by in which suit may be brought, and his inducement is of such character as to make it iniquitous to permit the statute to be pleaded as a defense."

See, also, Barnsdall Oil Co. v. Ricks, 175 Okla. 478, 53 P. 2d 210; Empire Gas & Fuel Co. v. Lindersmith, 131 Okla. 183, 268 P. 218; Skelly Oil Co. v. Odom, 131 Okla. 183, 268 P. 220; Annotation 77 A. L. R. 1044.

The defendant cites Taylor v. Harmon, 120 Okla. 145, 250 P. 887, where it was held that an agreement to submit a controversy between the parties to their respective attorneys, for their consideration and advice as to a plan of settlement, would not bar the defendant from asserting the statute. But there the submission was all that was ever effected by any of the parties. The attorneys failed to do anything whatever, such as passing on the question involved, or to suggest some method of settlement. The plaintiffs likewise failed to act, in any manner, and, as stated in the opinion (120 Okla. 147-148, 250 P. 889):

"Plaintiffs, who were out of possession and against whom the time was running, took no more interest in hurrying the attorneys than the defendant did. No particular time was set, and plaintiffs asked for none. * * * Plaintiffs showed no diligence in protecting their rights against the bar of the statute, and equity could not do for them what they failed to do for themselves."

Plaintiff in the present case, however, was not guilty of any lack of diligence. This same question was considered and the same distinction was made, as to Taylor v. Harmon, in the Barnsdall Oil Company Case, supra. See that opinion, 175 Okla. 478 at 482, 53 P. 2d 210 at 214.

The defendant also contends that the trial judge erred in admitting in evidence the opinions of certain witnesses who were not properly qualified to testify as to their opinions. The plaintiff and twelve of his witnesses testified, over the strenuous objections of defendant, that their opinions were that the smelter smoke was the cause of the malady suffered by plaintiff's colts. These witnesses had made no examination of the smelter smoke, other than to smell it; they did not know what deleterious substance, if any, was in the smoke; they had made no examination of the grass or vegetation to determine whether same was poisoned; they had made no examination of the colts, other than merely observing

their external symptoms; they were simply lay witnesses who had lived for a number of years in that vicinity, and some of whom had raised or observed colts with the same symptoms as plaintiff's colts. Their opinion that the smoke was the cause, was based only on the fact that they could think of no other cause, and that they did not know of colts raised elsewhere which exhibited these symptoms. Considerable argument over this question is had by the parties, but the foregoing is the sum and substance of the only qualification advanced in support of permitting these witnesses to testify as to their opinions.

Considerable latitude has sometimes been permitted by this court in the admission of opinion testimony by witnesses who were not experts, but the foregoing is somewhat b e y o n d any boundaries heretofore approvingly noticed by this court.

In order for opinion evidence to be admissible it is not necessary that the witness be a technical expert. It is necessary, however, that he have some peculiar experience or observation or training in the matter concerning which he is vouchsafing his opinion, which experience or training is not shared by the average jury. Assuming that these witnesses had observed colts with the same external symptoms, in that same vicinity, and not elsewhere, we fail to comprehend how that would qualify them to express the opinion that smelter smoke was the cause of the symptoms. The jury would have been as qualified, and no less qualified, to adopt the same opinion,—assuming, for the time being, but not holding, that such would have been a sufficient basis for that conclusion.

The plaintiff points out that in Yates v. Garrett, 19 Okla. 449, 92 P. 142, we held that lay witnesses could give their opinions that cattle were affected with Texas fever, which caused their death. But the lay witnesses therein were independently familiar with Texas fever. See the following from the opinion in that case:

"But we take the rule to be: That where a witness has had experience, as a farmer and cattle raiser, with cattle which are infected with this disease, he is sufficient of an expert to be allowed to give his testimony."

The same is true as to salt water damage to cattle. As an illustration, in Indian Territory Illuminating Oil Co. v. Carter, 177 Okla. 1, 57 P. 2d 864, we said:

"This court has adopted the view that where a witness has had experience as a farmer and cattle raiser with cattle which are infected with a disease, he is sufficiently expert to be allowed to give his testimony."

The point is that lay witnesses, in all such cases where they were permitted to give their opinions, were familiar with the disease or malady itself, and had had experience with cattle known to be affected with it, while in the instant case no colt ever observed by the witnesses was definitely shown or known to have been affected by the smelter smoke itself. The witnesses had merely made the same conclusion about other colts which they made about plaintiff's colts; that is, that unless it was the smelter smoke they did not know what it was that was causing the injury. In order for this court to approve that basis of proving lay witness's competency, it would first be necessary to assume that said witnesses were cognizant of all possible causes for the malady, which would entail assuming, as a hypothesis, that they were true experts, in contravention of the admitted fact.

While it is not necessary at this time to rule upon defendant's contention that for lack of competent evidence judgment should be entered for defendant, we have no doubt that the erroneous admission of the opinion of the 13 witnesses constituted prejudicial error. There is no other proposition advanced in the briefs which need be discussed. The judgment is reversed and the cause is remanded for new trial.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, OSBORN, CORN, HURST, and DAVISON, JJ., concur. GIBSON, J., absent.