**BECK v. FINLEY et al.**

No. 9536—Opinion Filed Jan. 27, 1920.

Rehearing Denied Feb. 24, 1920,

(Syllabus by the Court.)

1. **Trial—Special Findings and Separate Conclusions of Law—Request—Waiver.**

Under the provisions of section 5017, Rev. Laws, 1910, either party may require special findings of facts and separate conclusions of law by making timely request therefor. Where no request is made until after the court has announced general findings and conclusions, the right will be deemed to have been waived.

2. **Fraud—Sales—Misrepresentations as to Value.**

Ordinarily representations as to value are not actionable, but the rule does not apply where the seller of property expresses an opinion as to its value and in the same connection uses some artifice by which the purchaser fails to examine it or to exercise his own judgment as to its value. The representations as to value in such cases, if untrue, are actionable.

3. **Same—Duplicity of Seller.**

It is an old and well-established principle of equity that a person cannot be, either directly or indirectly, both seller and purchaser in the same transaction.

4. **Mines and Minerals—Sale of Lease—Fraudulent Representations—Rescission.**

Where the sellers of a certain mill and mining lease entered into a secret agreement to pay a commission to one of the three purchasers thereof, and not to hold him liable on notes executed by him and his associates for the purchase price, and such pretended purchaser and secret agent of the sellers made false representations to his associates as to the condition and value of the property, and they, relying upon such representations, did not make an independent investigation as to the condition and value of the property, and were thereby defrauded, held, on discovery of the fraud the innocent purchasers were entitled to maintain an action to rescind the contract.

5. **Sales—Rescission for Fraud—Laches.**

Persons fraudulently induced to enter into a contract of sale are not guilty of laches in instituting the action where the same is instituted within a reasonable time after the discovery of the deceit practiced upon them.

6. **Mines and Minerals—Sale of Lease—Rescission for Fraud—Sufficiency of Evidence.**

Evidence in the record examined and the judgment of the trial court found not to be clearly against the weight thereof.

7. **New Trial—Grounds—Newly Discovered Evidence.**

A new trial will not be granted upon the ground of newly discovered evidence where it does not appear that such evidence would have probably changed the result of the trial.

Error from District Court, Ottawa County; Geo. C. Crump, Judge.

Action by George W. Finley and another against George W. Beck,. Jr., and others. Judgment for plaintiffs, and defendant named brings error. Affirmed.

W. H. Kornegay and F. D. Adams, for plaintiff in error.

A. C. Towne, John L. Crank, and ,Riddle & Bennett, for defendants in error.

RAINEY, J. This action was instituted by George W. Finley and George W. Gordan, hereinafter called plaintiffs, against George .W. Beck, Jr., M. L. Pierce, and Joseph L. Todd, hereinafter called defendants, to rescind a certain agreement entered into in August, 1913, by which George W. Beck, Jr., and M. L. Pierce sold to George W. Finley, George R. Gordon, and J. L. Todd, a certain mining lease and mill thereon situated in Ottawa county, Oklahoma.

Plaintiffs alleged in their petition that the consideration for the purchase of said lease and mill was $5,500, $1,000 of which was paid in cash and the remainder in two notes aggregating $4,500, which were secured by a mortgage on the mill and machinery; that of the $1,000 in cash Todd was to pay $500; that Todd was the secret agent of the defendants, and that he had a secret understanding with the defendant Beck that he. Todd, was not to become liable for any part of the purchase price of said property or on the notes which he had signed with the plaintiffs; that the plaintiff Finley was unable to see how to write without his glasses, and not having them with him when he went to make the cash payment, Todd drew the check for him to sign for his part, and fraudulently wrote it for the sum of $1,000. The petition also alleged that the plaintiff Gordon was a physician and surgeon engaged in the practice at Wagoner, Oklahoma; that he knew nothing about the mining business or mill property, and that this fact was well known to the defendants; that the plaintiff Finley was a Peoria Indian, a farmer by occupation, and that he also did not know the value of mining property in general, or this in particular, which fact was likewise known to the defendants; that the defendants falsely and fraudulently represented to the plaintiffs that the mine sold was of great value, and that it was unnecessary for them to make an examination of it since Todd was a practical and efficient miner, had examined it and knew all about it; that defendants further represented to plaintiffs that the

mine had been fully prospected and tested, that it was rich in lead and zinc ore, and that at that time there were great quantities of ore in sight which was more than sufficient to pay plaintiffs' notes within 60 days; that these representations were made in the presence of Todd, who reiterated and vouched for them. There were also other allegations of fraud. Plaintiffs further alleged that the representations made to them were false, but that they believed them to be true and relied upon the same to their damage, and that upon their ascertaining that the representations were false and that the mine was worthless, they immediately went to the defendants and demanded a return of their notes and mortgage, and tendered an assignment of the lease that they had received. There was a prayer for rescission and damages.

The defendant Pierce did not file an answer, but defendant George W. Beck, Jr., filed an answer, in which he admitted the sale of the property for the consideration alleged in plaintiffs' petition; admitted that he acted for himself and the defendant Pierce in said transaction, but denied the allegations of fraud, and specifically denied that the defendant Todd was in any way connected with him or in any way represented him in the negotiations resulting in the sale of the property, and further denied that there was any agreement or understanding whereby Todd was to receive a commission for the making of said sale, or was not to be bound and held liable for the payment of the notes given for the balance due on said property. The cause was tried to the court without a jury, resulting in a judgment being rendered for the plaintiffs, canceling the notes and mortgage and for a personal judgment against the defendants Beck and Pierce for the sum of $1,602.08. From this judgment, George W. Beck, Jr., has appealed, assigning numerous errors.

Many of the assignments of error complain of the findings of the trial court, and of the refusal of the court to make certain findings as requested by the defendant. An examination of the record discloses that at the conclusion of the hearing the court stated that he would not make findings of fact and conclusions of law, but that he would outline and state in the record the judgment of the court and his reasons therefor. No error can be predicated upon the refusal of the court to make the special findings of fact requested, for the reason that no request was made therefor until after the court had announced what his judgment would be. In the fourth paragraph of the syllabus in German State Bank of Elk City v. Ptachek et

al., 67 Oklahoma, 169 Pac. 1094, this court held:

"Under the provisions of section 5017, Rev. Laws 1910, either party may require a special finding of facts and separate conclusions of law by making timely request therefor. Where no request is made until after the court has announced general findings and conclusions, the right will be deemed to have been waived."

This is an equitable action, and under the rule prevailing in this jurisdiction it is our duty to weigh the evidence, but the judgment of the trial court must stand unless it is clearly against the weight of the evidence, or where there are errors of law requiring a reversal.

It is strenuously insisted that the record fails to show any material misrepresentations were made by defendant Beck to either Finley or Gordon. Counsel for defendants say that misrepresentations as to the value of property are not sufficient in law to constitute fraud where such representations relate to expected earnings or profits, and cite in support of this position Black on Rescission of Contracts, sec. 86; Smith on the Law of Frauds, sec. 33; Gordon et al v. Butler, 105 U. S. (15 Otto) 553, 26 L. Ed. 1166; Mumford v. Tolman, 157 Ill. 268, 41 N. E. 617; Ely-Walker Dry Goods Co. v. Smith, 69 Oklahoma, 160 Pac. 898; Hazlitt v. Wilkins, 42 Okla. 20, 140 Pac. 410, and Limerick v. Jefferson Life Ins. Co., 67 Oklahoma, 169 Pac. 1080. In the last-named case this court stated the general rule to be that whenever property of any kind depends for its value upon a contingency which may never occur, or developments which may never be made, opinion as to its value must necessarily be more or less of a speculative character; and no action will lie for its expression, however fallacious it may prove, or whatever the injury a reliance upon it may produce. This is undoubtedly the general rule, but the facts in the instant case take it out of that rule. In Smith on the Law of Frauds, in paragraph 33, page 42, with reference to representations as to value, it is stated in effect that, while ordinarily representations as to value are not actionable, there are exceptions to the rule, and the author of the text gives the following illustration:

"If the seller of an article of property expresses an opinion as to value, and, in the same connection, uses some artifice by which the purchaser fails to exercise his own judgment, or make an examination to satisfy himself as to the value, the rule does not apply, and the representations, if untrue, are actionable.

"And so where an opinion as to value is

expressed by the seller to the buyer and the parties do not stand upon an equality or equal footing. In such case the buyer being inexperienced or ignorant of the value which is known to the seller, the former has a legal right to reply upon the statements made to him."

Now, the artifice claimed to have been practiced by Mr. Beck, the seller, is that he had arranged with Todd to sell the property and to give Todd a commission for his services in connection therewith; that this fact was unknown to Gordon and Finley, who believed that Todd was equally interested with them in purchasing the property and would protect their interests, but on the contrary Todd made misrepresentations as to the condition and value of the property at the instance of Beck, or at least in his presence. This claim, we think, is amply supported by the evidence in the record, which shows that Todd was thoroughly familiar with the property and that Gordon and Finley were not. It further appears that Todd had an option in writing to purchase the property at $5,500 net, which option he took in the name of the Miami Lead & Zinc Company, a corporation, in which Gordon, Finley, and Todd were interested. It seems that Gordon and Finley knew of this option, but that it had expired before the consummation of the transaction herein involved, and that Todd subsequently had a verbal option from Beck to dispose of the same property at $5,000 net. Todd testified by deposition for plaintiffs, and, as we regard his testimony as very material, we quote from it in part as follows:

"Q. State whether you ever made any effort to sell the property? A. I did. Q. For whom were you selling it? A. I was selling it for Mr. Beck. Q. Did you ever succeed in making a sale of the lease and mill? A. Yes. Q. To whom? A. To myself, and George W. Finley and Dr. Gordon—Dr. George R. Gordon. Q. Did anyone ever suggest to you that it might be sold in that way, or to those parties? A. Well, I don't know whether the suggestion was just in that way, or not. Mr. Beck had asked me if I had any parties that would take up the property and I told him, then, that I was looking to close a deal with some parties and perhaps I could interest them; and he asked me if Mr. Finley would take an interest—to the best I recall, and I told him, that he would, provided we could get Doctor Gordon or some one else to take an interest. Q. You say, the sale was finally made by you? A. Yes, I was—I made the sale. Q. Were you promised anything, by anyone, for making the deal? A. I was promised a commission, when I took the option on, on the sale. Q. Were you promised anything for making this deal? A. Yes. Q. By whom. A. By Mr. Beck. Q. What were you promised? A. I was promised $500—under certain conditions."

With reference to his liability on the notes Todd stated that, as he understood it, if he did not have anything he could not be made to pay the notes, but that he would be taken care of by Mr. Beck for his part of the notes, whatever it was; that he would be allowed time sufficient to pay his part of the notes, or that Beck would take his interest at that time if he would turn his interest to him.

He further testified that he never, in fact, received any commission whatever. It is true that the record shows that Todd's testimony was considerably weakened on cross-examination, apparently due to an effort on his part to place his actions in the matter in the best possible light, and it is also true that he testified that at least one of the plaintiffs knew that he was to receive a commission in making the sale, but his evidence in this respect was contradicted by them. It is an old and well-established principle of equity that a person cannot be, either directly or indirectly, both seller and purchaser in the same transaction, for the obvious reason that he is not in a situation, on account of his conflicting interests, to act fairly and impartially between the parties. Applying this principle to the instant case and taking into consideration the fact that Todd was at the time of the transaction and some time prior thereto had been a business associate of Finley and Gordon, in whom they placed great confidence, we have no doubt that Todd's representations as to the value of the property made in the presence of Mr. Beck are sufficient grounds upon which to predicate fraud for the rescission of the contract.

In Lockwood v. Fitts, 90 Ala. 150, it was held, that, where representations were made that certain prominent men were stockholders, when in truth and in fact such persons had given their notes with a secret understanding and agreement that they were to be returned without payment, an action for deceit would lie. The case of Reger v. Henry, 48 Okla. 759, 150 Pac. 722, is also in point in principle. Moreover, the alleged false representations as to the condition of the mine by both Beck and Todd did not relate solely to expected earnings or profits, as they also made representations, alleged to be false, as to the condition of the mine as disclosed by the prospecting and development that had already taken place at the time of the sale.

We cannot agree with counsel for defendants that plaintiffs are estopped from rescinding the contract on the ground that they accepted and retained the benefits thereof. The record does show that after plaintiffs secured possession of the property they painted the mill and operated it for a short

time, but did not get enough mineral to pay expenses. Later they attempted to sell the property, but according to the evidence in the record, were unable to do so, for the reason that attorneys who examined the title made an adverse report thereon. That no title was conveyed was one of the grounds for rescission, but we have not considered this phase of the case, as we are of the opinion that there is sufficient evidence to support the judgment of the trial court aside from this issue. While there is some conflict in the evidence as to whether it was profitable to operate the mill, we think the weight thereof supports plaintiffs' contention that it was not. The fact; however, that subsequent operations or development proved that the property was valueless would not be sufficient upon which to predicate a judgment for fraud were it not for the fact that the weight of the evidence further shows that the defendant Beck, through artifice, induced the plaintiffs to believe that the lease was very valuable and prevented their making an independent investigation as to its real condition.

We do not think the plaintiffs were guilty of laches, for the reason that, although they did not immediately bring suit upon discovering the worthlessness of the mine, they did institute their action within a reasonable time after they discovered that Todd, on whose judgment they thought they had a right to rely, was in fact the agent of the seller. We have not overlooked the fact that the contention that the mine was worthless is vigorously denied. While there is evidence from which it might be deduced that the mine was capable of being operated profitably, we agree with the trial court that the weight of the evidence was otherwise.

A considerable portion of defendant's brief is devoted to the advancement of the idea that plaintiffs were not greatly concerned as to the value of the mill and lease purchased, and that they only acquired it for the purpose of using it for advertising the Miami Lead & Zinc Company, which is denominated by the defendants as a "blue sky" organization. It cannot be disputed that there are some facts and circumstances in evidence from which this deduction might be drawn, but at most the deduction is based on suspicion and not supported by any direct evidence.

Defendants also say that the trial court erred in refusing to grant them a new trial on the ground of newly discovered evidence. In this jurisdiction a new trial will not be granted on this ground unless such evidence, among other things, is such as would probably change the result of the trial. It is our opinion that if such evidence had been given at the trial, it would not have changed the result.

Finding no reversible error, the judgment is affirmed.

OWEN, C. J., and KANE, JOHNSON, and McNEILL, JJ., concur.