**TAYLOR et al. v. HARMON et al.**

No. 16842—Opinion Filed Sept. 14, 1926.

Rehearing Denied Nov. 30, 1926.

1. **Adverse Possession—Proof to Establish Title by Prescription.**

Where defendant pleads as a defense the statute of limitation as a bar to the action in ejectment, to sustain the plea and establish title by prescription, the proof must be clear, convincing, and unequivocal that the possession has been open, exclusive, continuous, and hostile, under claim of ownership, during the entire statutory period.

2. **Limitation of Actions—Running of Statute not Suspended by Agreement to Submit Controversy to Attorneys for Advice.**

An agreement to submit a controversy between the parties to their respective attorneys for them to consider and advise a plan of settlement, which is never acted upon by the attorneys, will not prevent the running of the statute of limitation during

the continuance of the submission, without it is specially agreed between the parties that, pending the submission, the right to sue is suspended.

**3. Appeal and Error—Harmless Error.**

Where a cause is tried to the court and the judgment rendered is supported by the evidence and law applicable, stinging criticisms of the court against the losing party are not sufficient to work a reversal of the case.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Carter Countl; Asa E. Walden, Judge.

Action by Dow Taylor et al. against R. G. Harmon et al. Judgment for defendant Harmon, and plaintiffs appeal. Affirmed.

Sigler & Jackson, for plaintiffs in error.

Thompson & Thompson and W. F. Bowman, for defendants in error.

Opinion by THREADGILL, C. The parties appeared as plaintiffs and defendant in the trial court as they do here and will be so designated in this opinion. The facts in the case may be briefly stated as follows: Belton Davis was a Choctaw freedman, and received the N. E. ¼ of N. W. ¼ of section 34, T. 2 S., R. 2 W., in Carter county, 40 acres of land, as his allotment, under the Act of Congress of July 1, 1902 (32 Stat. 641). Thereafter said Belton Davis died, intestate, without marriage or issue, on or about December 26, 1907, and left surviving him his putative father, Louis Davis, and several half-brothers and sisters, and the children of a deceased half-sister. It is not disputed that said allottee was the illegitimate son of Viney Jordan, who died prior to his death. On March 7, 1908, after the allottee's death, his reputed father, said Louis Davis, conveyed the land by warranty deed to Zack T. Harmon, which deed was placed on record in Carter county March 10, 1908. Said Harmon took actual and exclusive possession of said land, and occupied it and used it as the owner thereof, and held such possession until October 17, 1912, when he and his wife conveyed it by warranty deed to Randolph Ross, and thereupon said Ross took actual and exclusive possession of the same, and occupied it and used it as the owner thereof until November 16, 1912, when he and his wife sold and conveyed it by warranty deed to J. W. Crowell, who took actual and exclusive possession, and occupied and used said land as owner there-

of till October 3, 1919, when he sold and conveyed the same by warranty deed to the defendant R. J. Harmon, who took exclusive and actual possession of the same and occupied it and used it, and was in possession thereof at the time this action was brought and at the time judgment was rendered in the case. The issues were joined on an amended petition, and all the parties in Dow Taylor's chain of title were made plaintiffs, still, the only real parties plaintiffs were Dow Taylor and Rena Clay.

It appears from the record that Dow Taylor took a deed to the land from Amos Moss, who claimed to be a brother of Belton Davis, deceased, said deed being dated January 18, 1912. On January 26, 1911, he took a deed from Martha Christian, conveying her interest. On January 31, 1914, he took a deed from Burwell Taylor, conveying his interest, and on March 23, 1915, he took a deed from the McCoys conveying their interest. These deeds were placed on record. The one-fifth interest claimed by Rena Clay was not purchased by said Taylor. About a year after the defendant purchased the land, he made application for a loan on it, and an abstract revealed the deeds of Dow Taylor against the land, and defendant was advised for the first time that his title was defective. Thereafter, about July or August, 1920, plaintiff, Dow Taylor, and defendant had a conversation about their titles. Each claimed rights to the land by purchase, and defendant proposed that they leave it to their attorneys and abide by what they said. They talked to their attorneys and the attorneys talked to each other, but no offer of compromise or settlement was ever made or accepted by either party, and, in the meantime, about three years passed and the 15 years limitation for bringing suit to recover real estate expired March 7, 1923, and plaintiffs did not file their action till July 2, 1924. Defendant made his defense on the ground of this statutory limitation, and the court sustained the contention and rendered judgment in his favor, and plaintiffs have appealed asking for a reversal and that judgment be rendered in their favor.

1. Plaintiffs' contention is that the judgment of the trial court is contrary to the evidence and the law. Their first proposition is that:

"The burden was upon the defendant to show that the plaintiffs' cause of action was barred by the statute of limitation, and, to establish the bar of the statute, the

proof must be clear, convincing, and unequivocal that the possession had been open, exclusive, and hostile during the entire statutory period, and the defendant, under the evidence, failed to establish these elements."

We agree with the first part of this proposition fully and the authorities cited from Corpus Juris and Ruling Case Law, and Pauls Valley National Bank v. Foss, 99 Okla. 178, 226 Pac. 567, but plaintiffs' contention that the defendant, under the evidence, failed to establish these elements is not well taken. In their argument they admit that the evidence is sufficient to show actual, open, and notorious possession, but not sufficient to show exclusive and hostile possession the full statutory period. Plaintiffs do not state very clearly just what they mean by saying the evidence is not sufficient to show exclusive possession, and we take it they could not state any meaning contrary to the uncontradicted testimony that defendant and his grantors had been in possession of the land since 1908 to the exclusion of the plaintiffs and all the world, but plaintiffs do state what they mean by the proof not being sufficient to show hostile possession. In their brief they say:

"No evidence was introduced to dispute the plaintiff's (Dow Taylor's) evidence that the defendant told him that he had some interest in the land, and that he was not informed as to the rights of the parties of the litigation."

We have examined this evidence, and we fail to find any affirmative admission that plaintiffs had any interest in the land. The most that could be said of this part of the evidence, as shown by the conversation, is that he did not know whether the plaintiffs had any interest or not. He and his grantors had bought the land in good faith and had occupied it and used it and improved it as owners against all the world, and defendant had no actual knowledge of plaintiffs' claims until about a year after he bought the land and took possession of it, when he was applying for a loan. He recognized the defect in his title, but did not concede the claims of plaintiffs. He did not know whether plaintiffs had any rights in the land or not. He agreed to submit the controversy to their respective attorneys for advice and settlement. The attorneys discussed the matter, but failed to agree as to rights of the parties on any proposition of settlement. The evidence fails to show that defendant made any concessions to plaintiffs, but, on the other

hand, continued to occupy the premises and use the same as the exclusive owner, paying the taxes and improving the property, but paying no rent nor promising to pay any. We think the rule applicable is stated in 2 C. J. 125, as follows:

"To say that the possession must be hostile is equivalent to saying that it must be under a claim or right. Nevertheless, this principle must not be so extended as to contravene another principle applicable to adverse possession. That a party may claim adversely though he knows that his title is defective, but he must claim a right to the land."

We think, under the evidence and the rule quoted, that defendant's possession was actual, open, notorious, exclusive, and hostile against all claims of the plaintiffs.

2. Plaintiffs' second proposition is to the effect that defendant, by his contract and agreement to submit the controversy as to the rights of the parties to their attorneys for advice and settlement, estops the defendant to plead the bar of the statute. Whatever the particular agreement was, they treat it as one in the nature of a "lullaby," which caused plaintiffs to sleep on their rights until the statute of limitation ran against them. They cite us to the rule laid down in 10 R. C. L. 835, which reads as follows:

"Similarly, an agreement in accord and satisfaction or for an arbitration award, or for a reference, or an agreement that a claim is to abide the issue of a suit on another claim, or any agreement whereby the creditor is lulled into security and thereby delays action, is held to create an estoppel barring the debtor from relying on the statute."

Also, to the same effect 37 C. J. 725, and other authorities.

We do not think the facts of the agreement sufficient to support these authorities. They agreed to leave their contentions to their attorneys for advice and settlement. Plaintiffs claimed they owned the land by deeds, and yet they have never been in possession, and defendant claimed that he owned it through his deed and the chain of title of his grantors, and they had been in possession continuously since 1908. The attorneys were to pass on the question and suggest some method of settlement. This the attorneys never did. There was no deception in the agreement. Neither party showed any disposition to hurry the matter. Plaintiffs, who were out of possession and against whom the time was run-

ning, took no more interest in hurrying the attorneys than the defendant did. No particular time was set and plaintiffs asked for none. There was no agreement to suspend the running of the limitation statute during the time the controversy was submitted to the attorneys. Plaintiffs showed no diligence in protecting their rights against the bar of the statute, and equity could not do for them what they failed to do for themselves.

Section 183, Compiled Statutes 1921, provides as follows:

"Actions for the recovery of real property or for the determination of any adverse right or interest therein, can only be brought within the periods hereinafter prescribed, after the cause of action shall have accrued, and at no time thereafter."

The rule cited by defendant in 5 C. J. 51, we think is applicable to the facts in the case, and reads as follows:

"A mere submission to arbitration of matters upon which the arbitrators have never acted will not prevent the running of the statute of limitations during the continuance of the submission. It has been held that the rule is not affected by the fact that, pending the submission, the right to sue was suspended."

See, also, Van Beuren v. Wotherspoon, 42 N. Y. Supp. 404; Cowart v. Perrine, 18 N. J. Eq. 454; U. S. Fidelity & Guaranty Co. v. Dickason (Ill.) 115 N. E. 173; 10 R. C. L. 835. From these authorities and the facts as disclosed by the record, we must conclude that there was no ground of estoppel against the defendant's plea of limitation.

3. Plaintiffs' third contention is that the court was moved by his bias for the defendant, and his prejudice against the plaintiff, Dow Taylor, the one being a farmer, the other a physician. They say the case should be reversed on this point, and we find that the court did comment on the facts in rendering judgment, and used language tending to impugn the motives and good faith of the plaintiff, Taylor, in delaying so long before demanding any rights in the land— that he probably wanted as much improvement made and taxes paid as possible before asserting his rights, and, in the meantime, the "old farmer" was toiling and making improvements and paying the taxes and all in ignorance of the greed that awaited him. It may be that the evidence does not justify this criticism, and it would have been better unsaid, but we cannot agree that this was the basis of the court's

judgment. The facts and the law applicable, as we see it, fully support the court's judgment, and we cannot see where plaintiffs were injured by the court's stinging criticism.

The judgment, therefore, is hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 2 C. J. p. 276 §621; 1 R. C. L. 695; 1 R. C. L. Supp. p. 234; 4 R. C. L. Supp. p. 46. (2) 37 C. J. p. 1047, §458. (3) 4 C. J. p. 955, §2937.