**COATS** et al. v. **RILEY** et al.

No. 20454.   Opinion Filed Dec. 8, 1931.
Rehearing  Denied  Feb.  9,  1932.

ANDREWS, J. This is an appeal from a judgment of the district court of Hughes county in favor of the defendants in error and against the plaintiffs in error, adjudging that the plaintiffs in error have no right, title, or interest in and to the land involved in this action and enjoining them and each of them from asserting any right, title, or interest therein. A jury was waived and the cause was tried to the court.

For convenience, the plaintiffs in error hereinafter will be referred to as cross-petitioners, they having presented their claims to the land under a cross-petition, and the defendants in error will be referred to as defendants.

The land involved was allotted to Emily Weaver, who was enrolled as a full-blood member of the Choctaw Tribe of Indians in Oklahoma and who received the land as such allottee. She died on September 18, 1911, and left surviving her as her sole and only heirs at law Zeno Weaver, a son, Amanda Weaver, a daughter, Martha Sumner, nee Weaver, a daughter, James Coats, Lola Hester, nee Coats, and Annie Rush, nee Coats, the children of a predeceased daughter, Mary Coats, nee Weaver.

The grandchildren are the cross-petitioners herein. They each claim an undivided one-twelfth interest in the land by virtue of their relationship to Emily Weaver, deceased, under the applicable statutes of Oklahoma.

The claims of the cross-petitioners were denied by the defendants on three grounds: First, that Emily Weaver died testate and, under the terms of her will, the cross-petitioners acquired no right, title, or interest in or to the land in question, that land having been therein given and devised to other persons; second, that the rights, if any, of the cross-petitioners are barred by the applicable statute of limitation of Oklahoma; and third, that the rights, if any, of the cross-petitioners in the land involved in the action were acquired by the defendants by prescription, under the applicable statute of Oklahoma.

The will in question was not acknowledged and approved by any governmental agency, as required by the applicable federal statute, to wit, section 23 of the Act of Congress of April 26, 1906, as amended by section 8 of the Act of Congress of May 27, 1908, which reads as follows:

"Provided, that no will of a full-blood Indian devising real estate shall be valid, if such last will and testament disinherits the

Pryor & Stokes and Hugh M. Sandlin, for plaintiffs in error.

Anglin & Stevenson, Forrest M. Darrough, R. H. Matthews, and Horton & Gill, for defendants in error.

parent, wife, spouse, or children of such full-blood Indian, unless acknowledged before and approved by a judge of the United States Court for the Indian Territory, or a United States Commissioner, or a judge of a county court of the state of Oklahoma."

It was admitted to probate by the county court, but no order of distribution was made and no partition of the land was had. The will was executed in conformity with the provisions of the statutes of Oklahoma and it was properly admitted to probate by the county court under the provisions of the statutes of Oklahoma. The question presented here is: Was the will an invalid will under the federal statute quoted?

This court has construed the statute in Re Byford's Will, 65 Okla. 159, 165 P. 194, wherein it held:

"A devise by a full-blood Indian testator of his real estate, which deprives the parent, wife, spouse, or children of such testator of the estate therein to which they or any of them would succeed upon his death intestate, disinherits such parent, wife, spouse, or children, so deprived, within the provisions of Act Cong. Apr. 26, 1906, ch. 1876, sec. 23, 34 Stat. 145."

"The will of a full-blood Indian member of the Five Civilized Tribes, devising real estate, which disinherits the parent, wife, spouse, or children of such Indian, is invalid, unless acknowledged and approved in conformity with the provisions of Act Cong. April 26, 1906, ch. 1876, sec. 23, 34 Stat. 145, as amended by Act Cong. May 27, 1908, ch. 199, sec. 8, 35 Stat. 312, and therefore not entitled to probate."

And in Lauderdale v. Tookolo, 114 Okla. 187, 245 P. 587, wherein it held:

"Record examined in instant case: held, that, inasmuch as the will here in question attempted to disinherit the mother of the decedent and was not approved by a judge of the United States Court for the Indian Territory, or a United States Commissioner, or a judge of a county court of the state of Oklahoma as provided by section 23 of the Act of April 26, 1906, same is void, and the plaintiff herein, being a niece of the deceased, is a proper party to maintain this action."

See, also, Kolb v. Ball, 101 Okla. 100, 223 P. 660, and Rogers v. Mosier, 121 Okla. 213, 245 P. 36.

The action of the county court in admitting to probate a will of a full-blood Indian does not involve the determination of the question of whether or not the will has been acknowledged and approved in the manner required by the act of Congress. That question is presented for determination only when it is shown that the will disinherits in violation of the terms of the act. The will in question, by its terms, does not disinherit, though it may in fact disinherit under the construction of that word by the decisions of this court. The fact that the county court admitted the will to probate was not an adjudication that the will was valid under the federal act, and the order of the county court admitting the will to probate did not bar legal heirs to the estate from presenting their claim that the will was invalid under the provisions of the act of Congress. Though the will has been admitted to probate, no title to property was conveyed thereby, if it was not valid under the federal statute. In Armstrong v. Letty, 85 Okla. 205, 209 P. 168, this court held:

"The approval and acknowledgment of the will of a full-blood Indian required by Act Cong. of April 26, 1906, 34 Stat. 137, sec. 23, as amended by the Act of Congress of May 27, 1908, 35 Stat. 312, sec. 8, is not an element of the execution and attestation contemplated by the statute of Oklahoma, and is not within the purview of the jurisdiction of the county court in admitting a will to probate."

"The approval and acknowledgment of the will of a full-blood Indian required by the act of Congress is a requisite to the validity of the devise of restricted lands, and is not an element of due execution and attestation of the will of such Indian."

It is contended by the defendants that the fact that, under the terms of the will, more land was devised to one heir than to another does not make the will invalid for the reason that a small amount of land may be equal in value to a larger amount, and that disproportion in value and not disproportion in acreage is what renders the will invalid, under the act of Congress as construed by this court. In Copeland v. Johnson, 101 Okla. 228, 224 P. 986, this court discussed a similar contention and held:

"Where the will of a full-blood Chickasaw Indian devised to his wife the lands allotted to him as his homestead, and to his daughter his allotted lands exclusive of homestead, they being his sole heirs at law and the persons to whom said lands would have passed in equal shares by descent, and where said will was not acknowledged and approved in accordance with the provisions of the Act of Congress approved April 26, 1906, supra, as amended by the Act of Congress approved May 27, 1908, supra, held, that the validity of the will must be determined by the value of the lands devised to each at the date of the death of the testator; that if the lands were of substantially the same value at that time, the will is not invalid as disinheriting the wife and daughter, or either of them."

Under the terms of the will, Zeno

Weaver was given 230 acres of agricultural land, and each of his sisters was given 10 acres of agricultural land, all from the same allotment. The presumption is that the land was all of equal value. When it was shown by the record that the devises of the land were disproportionate in acreage, the burden was on the defendants to show that the disproportion in the acreage did not amount to disproportion in value. The defendants offer no evidence to establish that fact and there is nothing in the record to show that there was no disproportion in the value of the property devised or bequeathed under the terms of the will. In the absence of such a showing, this court must presume that ten acres of land is of less value than 230 acres of land. Where it lies within the power of a party to an action to produce evidence upon an issue, and he fails, the presumption follows that the evidence, if produced, would be unfavorable to the cause of such party. Thompson v. Coker, 112 Okla. 268, 241 P. 486.

In Copeland v. Johnson, supra, this court said:

"We conclude that the question of whether or not either the widow or daughter was disinherited by the terms of the will must be determined by ascertaining the value of the lands devised to each as of the 13th day of October, 1908, the date of the death of the testator, and if it be found that such lands were of substantially the same value at that time, the will should be upheld as valid. On the other hand, if it be found that there was a substantial difference in the value of said lands, then the will should be held invalid."

Therein there was under consideration a will in which a homestead allotment had been devised by a Chickasaw Indian to his wife and in which allotted lands exclusive of the homestead had been devised by him to his daughter. Under the Supplemental Choctaw-Chickasaw Agreement (32 Stat. L. 641), a Choctaw Indian was awarded land equal in value to 320 acres of average allottable land, one-half of which was designated as a homestead, and the other one-half was designated as lands exclusive of a homestead, commonly known as surplus. There, there was no disproportion in acreage from which the court could conclude that there was a disproportion in value. Here the disproportion in acreage is so much that, in the absence of evidence to the contrary and in view of the fact that those upon whom the burden rested failed to attempt to show that there was no disproportion in value, this court must presume that the 230 acres devised to Zeno Weaver was disproportionate

in value to the ten acres devised to each of his sisters.

The disinheritance of the cross-petitioners did not render the will invalid. Gillespie v. Wilson, 101 Okla. 62, 221 P. 82. It was the disinheritance of Amanda Weaver and Martha Weaver, the children of Emily Weaver, the testatrix, that rendered the will invalid. It was invalid not only as to those disinherited, who were within the terms of the act of Congress, but it was invalid as to all of the heirs of Amanda Weaver, including the cross-petitioners. Lauderdale v. Tookolo, supra. We therefore hold that the will of Emily Weaver was invalid, under the provisions of the act of Congress; that the cross-petitioners were heirs of Emily Weaver, and that each of them was entitled as such to inherit an undivided one-twelfth interest in the estate of Emily Weaver.

The defendants contend that, at the time they purchased the land, this court had held that whether or not there was a disinheritance by a will, was a question which was involved in the determination of the execution and attestation of the will; that an order admitting such a will to probate was an adjudication of the validity thereof, and that such an order was not subject to a collateral attack. They cite the case of Homer v. McCurtain, 40 Okla. 406, 138 P. 807, which was decided on January 13, 1914, and contend that, inasmuch as they purchased the land on October 22, 1914, their title thereto must be determined under the rule of law announced in that case.

In support of that contention they cite the case of Bagby v. Martin, 118 Okla. 244, 247 P. 404. That case considered and determined the effect of a construction of a statute by this court. It was therein said:

"A judicial construction of a statute by the Supreme Court of a state becomes a part of the statute, and operates on property and personal rights with the same degree of force as an unambiguous statute, which does not require judicial construction."

This court therein held:

"Contracts entered into in good faith, in relation to private property rights, in accordance with a statute as construed by the Supreme Court of the state, will be given effect according to the judicial construction of the statute in effect at the time the contract was entered into. A later construction of the statute by the same court, applying a different construction, will not affect the contract made pursuant to the former decision."

The statute that had been construed and that was under consideration in that case

was a statute relating to Creek Indian inheritance. It was in no wise a procedural statute. While the language of that opinion is general, it must be considered with reference to the subject-matter considered by the court and it cannot be extended to include a construction of a statute which is purely procedural.

The statute construed in Homer v. McCurtain, supra, was section 5157, Comp. Laws of 1909, which was retained as section 6210 in the Revised Laws of 1910, and which was carried forward as section 1106, C. O. S. 1921. That section pertains to proceedings on a contest of a will. In construing that statute, this court had before it a record wherein the will of an Indian was offered for probate and wherein a contestant appeared and contested the will, filed his protest, and did not appeal from the judgment of the county court. The estate was distributed by the court pursuant to the terms of the will. Thereafter the contestant sought to partition the real estate comprising the estate in another action. This court held that the decision of the county court upon the question, "unless appealed from," was final and not subject to collateral attack in a suit in partition wherein it was alleged that the will was void on account of noncompliance with the federal statute. This court did not have before it in that case such a record as is now presented to this court, and it did not therein consider the effect of section 1121, C. O. S. 1921. The effect of that decision was limited by the language used, to wit, "unless appealed from," and it should have been further limited in accordance with the provisions of section 1121, supra. This court therein considered the effect of a final order admitting a will to probate. It did not therein consider the effect of an order admitting a will to probate during the infancy of heirs and for one year after disability of infancy had been removed. If the construction announced in Homer v. McCurtain, supra, had remained the law in this state, the cross-petitioners, who were minors at the time of the making of the order admitting the will to probate, would have been entitled to the benefit of the provisions of section 1121, supra. For that reason the defendants did not take title to the property in reliance upon a final decision of the county court admitting the will to probate. They took the title thereto in reliance upon a decision of the county court admitting the will to probate, which decision was subject to the provisions of section 1121, supra, which provides as follows:

"If no person, within one year after the probate of a will, contests the same or the validity thereof, the probate of the will is conclusive, saving to infants and persons of unsound mind, a like period of one year after their respective disabilities are removed."

When this court in Armstrong v. Letty, supra, overruled the rule announced in Homer v. McCurtain, supra, In re Impunnubbee's Estate, 49 Okla. 161, 152 P. 346, "and other cases in conflict with the rule herein," the effect was to change the procedure for contests of Indian wills which had not been approved by the proper governmental agency. Theretofore the admission of such a will to probate operated as a judicial decree of the validity of such a will, subject to the rights of those under disability to contest the validity of the will within one year after their disability was removed. Upon such a contest, within the time limited, the validity of the will could be questioned though the will had been admitted to probate. By the decision of this court in Armstrong v. Letty, supra, that procedure was changed. It was no longer necessary to contest the validity of an Indian will which had not been approved by the proper governmental agency within one year after the disability was removed, as provided by section 1121, supra. A contest of the validity thereof could thereafter be made in a collateral proceeding without reference to the one year disability. There is nothing in the decision of this court in the case of Bagby v. Martin, supra, that was intended to or does prevent the operation of such a change of procedure. In Independent Cotton Oil Co. v. Beacham, 31 Okla. 384, 120 P. 969, this court held:

"No person has a vested right in any particular mode of procedure, and if, before the trial of the cause, a new law of procedure goes into effect, it governs, unless the statute itself provides otherwise."

See, also, Fry v. Wolfe, 106 Okla. 289, 234 P. 191. In Shelby-Downard Asphalt Co. v. Enyart, 67 Okla. 237, 170 P. 708, this court held:

"No one has a vested right in any particular mode of procedure for the enforcement or defense of his rights. Hence the general rule that statutes will be construed to be prospective only does not apply to statutes affecting procedure; but such statutes, unless the contrary intention is clearly expressed or implied, apply to all actions falling within their terms, whether the right of action existed before or accrued after the enactment."

In Clark v. K. C., St. L. & C. R. Co., 219 Mo. 524, 118 S. W. 41, the court held:

"Where a new statute deals with procedure only prima facie, it applies to all actions—those which have accrued or are pending as well as future actions"

—and said:

"The general rule that statutes will be construed to be prospective in operation does not apply to statutes affecting procedure or a legal remedy."

The defendants must concede the correctness of this rule and the application thereof to the facts in this case, for they rely on the Harreld-Hastings Act, 44 Stat. 239, as a basis of their claim that the rights of the cross-petitioners were barred by the statute of limitations. If the rule stated is not correct and applicable, the rights of the cross-petitioners remain as they existed prior to the adoption of the Harreld-Hastings Act. Under the decisions of this court in Collins Inv. Co. v. Beard, 46 Okla. 310, 148 P. 846, Bell v. Fitzpatrick, 53 Okla. 574, 157 P. 334, Brewer v. Dodson, 60 Okla. 81, 159 P. 329, Brewer v. Perryman, 62 Okla. 176, 162 P. 791, and Tidal Oil Co. v. Flanagan, 87 Okla. 231, 209 P. 729, the statute of limitation did not commence to run as to the cross-petitioners until the removal of the disabilities of the cross-petitioners.

Before the trial of the case from which this appeal was taken, the procedure with reference to the contest of the validity of Indian wills, which had not been approved by the proper governmental agency, had been held in the case of Armstrong v. Letty, supra, to be different from that stated in Homer v. McCurtain, supra, and the procedure therefor was that stated in Armstrong v. Letty, supra. After the announcement of the rule stated in that case, it was not necessary for the cross-petitioners to proceed under the provisions of section 1121, supra, and they were authorized to proceed as they did in this action.

Under the theory of the defendants, they purchased the property relying upon the order of the county court admitting the will to probate. They were charged with knowledge of the fact that a contest of the validity thereof might be made under the provisions of section 1121, supra. The records of that court constituted a part of their chain of title and they are charged with notice thereof. In Daniel v. Tolon, 53 Okla. 666, 157 P. 756, this court held:

"A purchaser of lands, why buys in reliance upon the record title, is chargeable with all the notice brought to him by the records; and if the record contains matters that would put a person of ordinary prudence upon inquiry into the nature of the title of the grantor, or of the rights and equities of a former owner, then the law charges such purchaser with all the knowledge an inquiry upon his part, prosecuted with reasonable diligence, would have brought home to him."

Under that rule the defendants were charged with knowledge of the facts stated in the petition for the probate of the will, to wit, that the cross-petitioners were minors and heirs of Emily Weaver. They cannot be heard to say that they did not know those facts.

At the time of the purchase of the land by the defendants, the cross-petitioners had a right to question the effect of the will of Emily Weaver under the federal statute. Under the decision of this court in Homer v. McCurtain, supra, their right was limited by the provisions of section 1121, supra. Under the decision of this court in Armstrong v. Letty, supra, their right was not so limited. Under the latter decision the cross-petitioners were not given a right of contest that they did not theretofore have. Under the latter decision the right of the cross-petitioners to contest the validity of the will of Emily Weaver remained to be exercised in a different manner. The change in the procedure was not such a change as was prohibited by the rule stated in Bagby v. Martin, supra, and that decision is not controlling in this action.

The cross-petitioners contend that the possession of one tenant in common, no matter how full and complete, may not be adverse to cotenants who are out of possession and that the possession of Zeno Weaver was not adverse to the interest of the cross-petitioners. The defendants contend that there was no cotenancy between the cross-petitioners and Zeno Weaver while they occupied the land; that, if there was, there was a complete ouster of them by him in November, 1911, and that Zeno Weaver was estopped to deny the title of his grantee or his authority to sell the land.

There would be some merit in the last contention if Zeno Weaver had attempted herein to deny the title of his grantee or his authority to sell the land. But this record shows that Zeno Weaver was not a party to this action and that he did not attempt to deny the title of his grantee or his authority to sell the land. Zeno Weaver appeared at the trial as a witness for the cross-petitioners, who caused

him to be sworn and who caused his testimony to be taken. Though Zeno Weaver was estopped, there was no estoppel as to the cross-petitioners. "An essential element of estoppel is that the party invoking it must have been misled to his injury by the wrongful conduct of the party against whom it is invoked." Tidal Oil Co. v. Flanagan, supra. There was no wrongful conduct on the part of the cross-petitioners. We know of no rule of estoppel applicable to the facts shown by the record in this case that would prevent the introduction of the testimony of Zeno Weaver by the cross-petitioners.

The record shows that Zeno Weaver was in possession of the land at the time Emily Weaver died without claim of ownership and that he thereafter held possession thereof for sometime. After the death of Emily Weaver, he and the cross-petitioners were cotenants of the land. Though the cross-petitioners did not occupy the premises or any part thereof, the mere occupancy thereof by Zeno Weaver did not make his possession adverse to the cross-petitioners. In Aldrich v. Hinds, 116 Okla. 300, 245 P. 854, this court held:

"Heirs of a deceased Indian, whose allotment was selected by his administrator, took title thereto as tenants in common, and, where possession was taken by some of them through a fiscal agent, such possession was not adverse to any other heir not represented by such agent, nor would such possession set in motion the statute of limitation as against any heir not represented by such agent, since the possession of one tenant in common is the possession of all."

The record shows that Zeno Weaver recognized the interests of the cross-petitioners in the land during the time that he occupied the land. He so testified and one of the cross-petitioners testified to the same effect. The testimony of those witnesses has little evidential value by reason of the fact that the cross-petitioner was six years of age at the time he now claims to have heard the statements of Zeno Weaver and because the testimony of Zeno Weaver is in conflict with his admitted acts, to wit, the execution of warranty deeds to the land. While those deeds were void because the conveyances were not approved by a governmental agency, as required by the provisions of section 23 of the Act of Congress of April 26, 1906, as amended by section 8 of the Act of. Congress of May 27, 1908, and while for that reason they cannot be made the basis of an estoppel (21 Corpus Juris, page 1100, section 90, and

cases therein cited), they were competent evidence to impeach the oral testimony of Zeno Weaver (21 Corpus Juris, page 1091, section 73). If the burden was on the cross-petitioners to show that the possession of the land by Zeno Weaver was not adverse, or to show that Zeno Weaver had lawfully ousted his cotenants, we would hold the testimony to be insufficient for those purposes, but such is not the case. Zeno Weaver and the cross-petitioners were cotenants and the possession of Zeno Weaver, in the absence of evidence to the contrary, was the possession of the cotenants. In Chouteau v. Chouteau, 49 Okla. 105, 152 P. 373, it was held:

"The mere possession of a tenant in common, no matter how full and complete, does not operate as an ouster of his cotenant, or amount to adverse possession as against the claim of his cotenant. There must be something to show a denial or repudiation of his cotenant's rights, or the possession will be deemed to be held, in subordination to the rights of the cotenant."

See, also, F. B. Collins Inv. Co. v. Beard, supra, and Tidal Oil Co. v. Flanagan, supra. The burden of showing adverse possession was on the one claiming the benefit thereof. Taylor v. Harmon, 120 Okla. 145, 250 P. 887. He must not only show possession in himself, or in one under whom he claims, but, where the possession was by a tenant in common, he must show a denial or a repudiation of the cotenant's rights. Chouteau v. Chouteau, supra. In this case the burden was upon the defendants. They did not show a denial or repudiation by Zeno Weaver of the rights of the cross-petitioners, and they did not attempt to do so except by cross-examination of Zeno Weaver and by showing the warranty deeds executed by him. His testimony on cross-examination was to the effect that, while he was in possession of the land, he told the guardian of the cross-petitioners that the cross-petitioners had a one-fourth interest in the land. That testimony was not denied. There is no testimony in the record to the contrary and there is no testimony in the record as to any denial or repudiation of the rights of the cross-petitioners in the land by Zeno Weaver.

"Where a person * * * has, without authority, undertaken to sell and convey the land of another person * * * the real owner of the land should not be precluded by this wrongful act from asserting his title to the land." War Fork Land Co. v. Marcum, 180 Ky. 352, 202 S. W. 668; 21 Corpus Juris, 1068.

Under the rule followed by this court,

every presumption is in favor of possession in subordination to the title of the true owner. Honeyman v. Andrew, 124 Okla. 18, 253 P. 489. If the one in possession recognizes the title of one out of possession, at any time prior to the expiration of the period provided by the statute of limitation, the continuity of the adverse possession is broken. Honeyman v. Andrew, supra.

A different rule is applicable in cases of tenancy in common where minors are involved than in cases where no minors are involved. The possession must continue "uninterruptedly for the statutory period after the time that knowledge thereof is, in the law, chargeable to those out of possession." 38 Cyc., page 25, section 97, paragraph B. The cases therein cited support the rule stated, and the rule is applicable unless there has been an ouster of the minor cotenants.

The void deeds that had been given by Zeno Weaver did not amount to an ouster of the cross-petitioners, under the law, for no possession was taken by the grantees. A conveyance must be coupled with possession in order to constitute an ouster. 7 R. C. L. 854.

The record shows a deed of Zeno Weaver and his sisters to James C. Smith, under date of November 10, 1911. That deed, in terms, conveyed "all our interest, right and title" in and to the land, and recited "the said Amanda Weaver, and Martha Sumner, also convey all interest and title acquired by deed to each of them executed by said Zeno Weaver, since the death of said Emily Weaver." We do not understand why that language was used in that deed, as the name of Emily Weaver nowhere else appears therein. That conveyance was approved by the county court on November 25, 1911. The order of approval was competent evidence of approval by a governmental agency, as required by the statute, but it was not competent evidence of anything else.

"The approval of a conveyance of inherited Indian land by a full-blood Indian, under the provisions of section 9 of the Act of Congress of May 27, 1908 (35 Stat. 315), is a 'ministerial' and not a 'judicial act'." Haddock v. Shelton, 142 Okla. 202, 286 P. 329.

That deed did not amount to an ouster of the cross-petitioners, under the law, though Zeno Weaver surrendered possession thereunder to James C. Smith, for it was not a conveyance which, by its terms, excluded the cross-petitioners. It was a conveyance of only "all our interests, right and title." 7 R. C. L. 854.

In Longfellow v. Bryne, 68 Okla. 314, 174 P. 745, this court held:

"A purchaser of the share in lands of a tenant in common becomes a tenant in common with the other tenants in common owning an interest therein."

"Undisturbed possession of real property as a tenant in common for the period of ten years, without acts of exclusion equivalent to an ouster, raises no presumption of adverse possession as against other tenants in common."

The editors of the American Law Reports, in volume 27, at page 8, state:

"Excluding any consideration of sales between cotenants inter se, it appears to be well settled that where one of several cotenants conveys the joint estate by an instrument purporting to vest the fee to the entire property in the grantee, and the latter enters, asserting open and exclusive ownership thereof, in severalty, the cotenant not conveying is deemed to be ousted, and, on the termination of the statutory period, title by adverse possession becomes vested in the grantee."

In support thereof there are a large number of cases cited from the various courts of this nation. We know of none that holds that a conveyance without possession, or a conveyance that does not purport to vest the fee to the entire property in the grantee, though coupled with possession, amounts to an ouster.

If the cross-petitioners in this case were ousted, it was not by a void deed under which no possession was taken by the grantees, and it was not by a conveyance of the "interest, right and title" of Zeno Weaver to James C. Smith. It was by the deed from Zeno Weaver to John Simmons, which was executed under date of April 12, 1913, if John Simmons went into possession thereunder. It is not necessary to determine that question, however, for the reason that possession after an ouster must be open, visible, continuous, and exclusive with a claim of ownership against all titles and claimants.

The record shows that Zeno Weaver again entered on the land under a deed to him from James C. Smith, which was dated August 13, 1912. He was asked, "I will ask you if you ever recognized while you were on that land the rights of those nephews and nieces of yours?" and he answered,

300

"Yes, sir." On cross-examination he was asked and answered:

"Q. When did you tell them that? A. Well, it was in 19—— somewheres about 1912, somewheres along then. Q. 1912. Who did you tell at that time? A. I told W. B. Coats."

That testimony is undenied. Evidently the statement of Zeno Weaver to W. B. Coats, who was the guardian of the cross-petitioners, was while Zeno Weaver was in possession of the land in the year 1912 under the deed to him from James C. Smith. That was a recognition by Zeno Weaver of the title of the cross-petitioners, and the continuity of adverse possession, if any, commenced prior thereto was thereby broken. Thereafter Zeno Weaver conveyed the land by a warranty deed to John Simmons under date of April 12, 1913. John Simmons did not testify in the case and no one testified as to the character of his possession of the land, if any he had.

In Vaughan v. Holder, 41 Okla. 101, 137 P. 672, this court held:

"A possession, to be adverse, must be open, visible, continuous, and exclusive, with a claim of ownership such as will notify parties seeking information upon the subject that the premises are not held in subordination to any title or claim of others, but against all titles and claimants. Following Flesher v. Callahan, 32 Okla. 283, 122 P. 489."

Whether or not there was "a claim of ownership" of the land by John Simmons is not shown by the record, and the record does not show "open, visible, continuous, and exclusive" possession by him.

The defendant A. H. Vance testified that he bought the land from Smith by deed, dated October 22, 1914, and that he moved on to the place "about New Years day about thirteen years ago," shortly after he bought it, and that he has been living on the place ever since he got it. His testimony was sufficient to show adverse possession by him since "about New Years" 1915. He testified, on cross-examination, that when he moved on the land Zeno Weaver had "done moved off" and that he moved on to the place "when Ed Sumner moved out of the house." He did not know how long it had been since Zeno Weaver had moved off the place and that he did not move on to the place the same fall that Zeno Weaver moved off. His wife testified that "we moved on it when John Sumner and Rice Sumner moved off." There is nothing in the testi-

mony of Vance or his wife as to the possession of the land by John Simmons.

James C. Smith, who purchased the land from John Simmons by deed dated February 11, 1914, testified for the defendants as to his possession of the land under his deed from John Simmons. He said that he took possession of the land when he purchased it and that "it seems to me like John Sumner was on the place" and "I believe Coats was on the place, a man named Coats"; that he collected the rents; and that when he sold the place to Vance he put him in possession of the property. There was nothing in his testimony to show whether or not John Simmons ever had possession of the land. That testimony was sufficient to show adverse possession of James C. Smith tacked with the adverse possession of Vance from February 11, 1914. The defendants are not aided by the testimony of Zeno Weaver that he "surrendered possession of this in 1914," for the reason that the date of the surrender in 1914 was not thereby shown, and for the further reason that this witness testified that he was not in possession of the land after he sold it to John Simmons. His deed to John Simmons was dated April 12, 1913. The witness testified that he gave possession to John Simmons, but he did not give the date thereof. If he gave possession to John Simmons on the date of the deed to him, it must have been on April 12, 1913. The record is silent as to the character of the possession of John Simmons, if any, from April 12, 1913, to February 11, 1914. Zeno Weaver was recalled and testified that he stayed on the land, after making the deed to Simmons, until the first of the year and that he "moved off in 1914, 4th day of January, I believe." The defendants insinuate that he was prompted to change his testimony and to make the latter statement, but we do not consider the change in the testimony to be material, for, if Zeno Weaver continued in possession of the land after his deed to John Simmons, he did so as a tenant or trustee of John Simmons, and he must be regarded as having held the same in subserviency to John Simmons. Flesher v. Callahan, 32 Okla. 283, 122 Pac. 489. Though Zeno Weaver continued in possession of the land until the 4th day of January, 1914, as testified by him, that does not establish a case for the defendants, for there is no testimony as to the character of possession, if any, of John Simmons between January 4, 1914, and February 11, 1914. We cannot determine from the testimony of

James C. Smith whether John Sumner and Coats were on the place when he bought it or whether they were put on the place by him. His testimony is as follows:

"Q. To whom did you rent it, have it rented to? A. Well, it seems to me like John Sumner was on the place. Q. John Sumner? A. Yes, sir. Q. Then from whom did you collect the rent previous to the year he did? A. I am not sure, but I believe Coats was on the place, a man named Coats. Q. Coats? A. Yes, sir; I am not sure about that though. Q. You collected the rents, did you? A. Yes, sir."

He might have meant that he put John Sumner and Coats on the place, but that testimony more nearly shows that John Sumner was on the place. At least the question, "From whom did you collect the rent previously to the year he did?" indicates that John Sumner had collected the rent for a previous year. It appears in the testimony of Mrs. Vance that John Sumner was on the place up to the time that Smith sold the place to Vance, and it appears from the testimony of Vance that Ed Sumner moved out of the house when he moved in. The record does not show whether John Summer and Ed Summer are the same or different individuals. If they are different individuals, there is nothing in this record to show the character of the possession of John Sumner. Ed Sumner testified that Zeno Weaver surrendered possession of the land in 1914. On cross-examination he was asked, "What time?" and he answered, "Well, it was along in the fall." He was then asked, "Fall of 1914, that is when you surrendered it?' and he answered "Yes, sir." From that testimony it would appear that Ed Sumner and Zeno Weaver each surrendered possession of the land in the fall of 1914. There is nothing in his testimony to show the character of his possession of the land, the character of the possession of John Sumner of the land, or whether or not either of them held possession through John Simmons. This witness testified that, in the fall of 1914, Zeno Weaver turned possession of the land to John Simmons. That statement conflicts with the statement of Zeno Weaver that he surrendered possession to John Simmons on the 4th day of January, 1914, but it corroborates the statement of Zeno Weaver that Zeno Weaver collected the rents in 1914. If, as stated by this witness, he surrendered possession of the land in the fall of 1914, we are warranted in assuming that he is the individual referred to by James C. Smith as "John Sumner."

We are unable to say from this record that there was continuous, open, visible, and exclusive possession under a claim of ownership by the defendants and those through whom they claim title prior to the 11th day of February, 1914. The judgment in this action was rendered on the 19th day of January, 1929. There was no showing of adverse possession of defendants under the rule stated by this court in Honeyman v. Andrew, supra, Taylor v. Harmon, supra, and Clark v. Atchison, T. & S. F. Ry. Co., 144 Okla. 244, 291 Pac. 86. There was no clear, convincing, and unequivocal proof that the possession of the land by the defendants was open, exclusive, continuous, and hostile under a claim of ownership during the period of 15 years.

Since the decision of this court in Flesher v. Callahan, supra, it has been consistently held by this court, and for a long time prior thereto it was and since that time it has been held by other courts, that the doctrine of adverse possession is to be taken strictly and that such possession is not to be made out by inference, but may be made out only by clear and positive proof, with every presumption in favor of possession in subordination to the title of the true owner. See, also, Rogers v. International Land Co., 111 Okla. 98, 238 P. 407, and Caldwell v. Scivally, 118 Okla. 1, 246 P. 879. When the record in this case is examined under that rule, it is found that the judgment of the trial court is against the clear weight of the evidence.

Since there was not sufficient proof of adverse possession, the claim of the defendants to title by prescription must fail.

The cross-petitioners contend that the trial court erred in refusing to make findings of fact and conclusions of law as requested by the cross-petitioners.

The law authorizing separate findings of fact and conclusions of law is stated in section 556, C. O. S. 1921, to be as follows:

"Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its findings, except generally, for the plaintiff or defendant, unless one of the parties request it with the view of excepting to the decision of the court upon the questions of law involved in the trial; in which case the court shall state in writing, the conclusions of fact found, separately from the conclusions of law."

The record shows no request for findings of fact and conclusions of law, and the only reference thereto in the record is that contained in an order of the court made under

date of January 22, 1929, which was as follows:

"Now, on this 22nd day of January, 1929, after the trial of said cause and after the argument was closed, the cross-petitioners, James Coats, Jessie Coats, Lola Hester, nee Coats, Claud Hester, Annie Rush, nee Coats and Fred Rush, by their attorneys, requested the court orally to make a finding of fact and conclusions of law, which request is by the court denied, to which action of the court, the defendants and cross-petitioners, above named, except." ·

In our opinion the trial court did not err in failing to make findings of fact and conclusions of law, for the reason that no timely request was made therefor. It will be noted that the request mentioned by the court in its order was made on January 22, 1929, which was three days after the completion of the trial, after the cause had been taken under advisement by the court, and on the day that the court rendered the judgment in the action. The request was not timely. McAlpin v. Hixon, 45 Okla. 376, 145 P. 386; German State Bank of Elk City v. Ptachek, 67 Okla. 176, 169 P. 1094; Smith v. Smith, 80 Okla. 136, 184 P. 82; Beck v. Finley, 77 Okla. 213, 187 P. 488.

For the reasons herein stated, the judgment of the trial court is reversed and the cause is remanded, with directions to enter judgment in favor of the cross-petitioners herein.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur.